William E. SCARBOROUGH, Petitioner,

v.

OFFICE OF PERSONNEL MANAGE-MENT, Respondent.

No. 82–8543.

United States Court of Appeals, Eleventh Circuit.

Jan. 23, 1984.

Dana E. McDonald, Atlanta, Ga., Robert G. Schwemm, Lexington, Ky., for petitioner.

Mary L. Jennings, Calvin M. Morrow, Washington, D.C., for intervenor M.S.P.B.

Robert A. Reutershan, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for respondent.

Before VANCE and CLARK, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

CLARK, Circuit Judge:

Petitioner, William E. Scarborough, appeals the Merit Systems Protection Board's (MSPB or Board) failure to award attorney fees after reversing the Office of Personnel Management's (OPM) denial of petitioner's voluntary disability retirement application. The issue presented is whether § 7701(g) of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (CSRA),[1] authorizes the Board to award attorney fees to a government employee who successfully appeals the OPM's unwarranted denial of his voluntary disability retirement application.

The OPM maintains that disability retirement denials are appealable to the Board pursuant to § 8347(d), not § 7701(a), and the absence of any language in Chapter 83 authorizing attorney fee awards precludes the Board from making such an award in Chapter 83 disability retirement cases. The Board and petitioner argue that attorney fees are proper because § 7701(a) governs disability retirement appeals. In the alternative, they suggest that whether § 7701(a)

---

* Honorable Luther M. Swygert, U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. The CSRA is codified in scattered sections of 5 U.S.C. §§ 1101–8911 (Supp. IV 1980). All section references are to title 5 U.S.C., unless otherwise indicated.

or § 8347(d) governs the appeal is immaterial because the Chapter 77 attorney fees provision applies to Chapter 83 appeals. The Board, however, joins in the OPM's contention that even if Chapter 77 authorizes the Board to award attorney fees in Chapter 83 retirement cases, petitioner is not entitled to attorney fees because § 7701(g) does not envisage employee initiated disability retirement applications.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was a Veterans Administration (VA) employee since 1974. In 1978, Scarborough began to suffer severe hypertension and lower back pain brought on by a degenerative disc, which made it impossible for him to perform his work satisfactorily. Indeed, Scarborough's health had so deteriorated that the VA even considered initiating an involuntary retirement action against him. Involuntary action became unnecessary, however, when on November 5, 1979, Scarborough filed an application for disability retirement with the OPM pursuant to 5 U.S.C. § 8337(a).[2] Upon filing the application, Scarborough was placed on leave from his job without pay.

To support his application, Scarborough produced his medical records, his doctor's report, and corroborating statements of two of his VA supervisors. Although no contrary evidence was offered, on April 3, 1980, the OPM denied Scarborough's application.

On April 23, 1980, Scarborough filed a request for reconsideration of this decision with the OPM. In support of this request, Scarborough pointed to the uncontradicted evidence of his disability in the record and furnished an additional medical report by a psychiatrist. This report described Scarborough's significant emotional problems and recommended that Scarborough be retired from his job, noting that "... continuation at his present job could bring about potential disaster." Again, no contrary evidence was offered. Nevertheless, on July 31, 1980, the OPM upheld its earlier denial.

Scarborough then hired an attorney who filed Scarborough's appeal of the OPM's reconsideration decision to the MSPB on August 15, 1980, pursuant to 5 C.F.R. Part 831, Subpart L. At the Board's hearing on October 20, 1980, Scarborough's attorney presented the evidence which Scarborough had earlier brought before the OPM. Again, the OPM offered no evidence or argument to contradict Scarborough's claim of disability; the OPM did not even appear at the hearing.

Based on this record, on December 16, 1980, the Board's Presiding Official[3] reversed the OPM's denial of Scarborough's application for disability retirement. The Presiding Official held that the OPM had failed to support its decision by the requisite preponderance of the evidence.[4] Furthermore, the Presiding Official found that the evidence of record established Scarborough's disability for retirement purposes.

Upon the Board's reversal of the OPM's denial of Scarborough's application,[5] Scar-

---

**2.** 5 U.S.C. § 8337(a) provides that "[a]n employee who completes 5 years of civilian service and is found by the Office of Personnel Management to have become disabled shall be retired on his own application or on application by his agency." In addition to his years with the VA, Scarborough had worked for a number of years in other government employment, so that his total tenure of civil service substantially exceeded the 5 years required by § 8337(a).

**3.** A "Presiding Official" includes "[a]ny person designated by the Board to preside over any hearing or to make a decision on the record, including an appeals officer, an administrative law judge, the Board, or any of the Members of the Board." 5 C.F.R. §· 1201.4(a).

**4.** See 5 U.S.C. § 7701(c).

**5.** The Board's decision became final on January 20, 1982. Subsequently, the Board issued a decision in a separate case (*Chavez v. Office of Personnel Management,* MSPB Case No. DA 831L090003 (May 28, 1981)) holding that the ultimate burden of persuasion to establish disability in a case brought by a voluntary applicant like Scarborough rests with the applicant as the party initiating the action. The *Chavez* opinion made clear, however, that "OPM of course remains obligated to come forward with evidence and an explanation demonstrating the basis on which it reached its determination." *Id.* at 19. In light of *Chavez,* the Presiding Official reviewed this case to make sure that

borough's attorney filed a motion for attorney fees and costs in the amount of $888.09 pursuant to 5 U.S.C. § 7701(g)(1).[6] Although by order dated February 5, 1981 the Board gave the OPM an opportunity to respond to this motion, the OPM chose not to file a response. On July 13, 1981, the Board's Presiding Official granted Scarborough's motion for attorney fees finding that a fee award was "warranted in the interest of justice" as required by § 7701(g)(1) because the OPM "knew or should have known that it would not prevail on the merits in the appeal before the Board."[7] *Scarborough v. OPM*, MSPB No. AT831L8010211, at 6 (1981). This conclusion was based on the fact that all of the evidence available to the OPM showed that Scarborough was indeed totally disabled for his position. The decision noted that the OPM virtually stood mute in Scarborough's appeal to the Board, and it concluded that the OPM "presented its case so negligently as to make it a foregone conclusion that its decision would not be sustained on the record as established before the Board." *Id.*

On August 11, 1981, the OPM filed a petition for review of the Presiding Official's grant of attorney fees.[8] While the OPM petition was pending, the Board held in another case (*Vergagni v. Office of Personnel Management*[9]) that 5 U.S.C. § 7701(g)(1)'s authorization of attorney fees

for successful appeals to the Board was not available in employee-initiated disability retirement cases. The *Vergagni* decision distinguished between involuntary retirement cases (initiated by the employing agency) and voluntary cases (initiated by the employee). The Board held that § 7701(g)(1) authorized fee awards only in involuntary retirement cases because a fee award in a voluntary case could not be considered "in the interest of justice." Based on *Vergagni*, the Board then reconsidered the fee award made to Scarborough and granted the OPM's petition to vacate that award on July 30, 1982. The Board's interpretation of the governing fee authorization statute prompted this appeal.

## II. JUDICIAL REVIEW

### A. *The Availability of Review: Jurisdiction*

The Circuit Courts of Appeal have split sharply in deciding whether the CSRA permits judicial review of voluntary disability retirement decisions.[10] Clearly, the OPM's initial determination is appealable to the MSPB. *See* 5 U.S.C. § 8347(d)(1). The courts have not agreed, however, in determining whether this administrative appeal is a disability retirement petitioner's exclusive redress or if the federal courts are the ultimate decisionmakers. This disagree-

---

Scarborough had met his burden of proof. The Presiding Official concluded that his initial decision in favor of Scarborough was consistent with *Chavez*, noting that Scarborough had carried his burden of persuasion by demonstrating that he was disabled for the position he held (Record Part I 133). The Presiding Official also noted that the OPM had come forward with no evidence and no explanation demonstrating the basis for its denial of Scarborough's application. *Ibid.*

**6.** For the relevant text of 5 U.S.C. § 7701(g)(1), see page 808, *infra.*

**7.** A fee award under § 7701(g)(1) has at least two prerequisites: (1) the petitioner must be a prevailing party and (2) the award must be warranted in the interest of justice. *Sterner v. Department of the Army*, 711 F.2d 1563, 1565–66 (Fed.Cir.1983). At least two other possible requirements have been suggested: the fees must be (1) actually incurred (*Bennett v. De-*

*partment of the Navy*, 699 F.2d 1140, 1142 (Fed.Cir.1983) (dicta)) in the course of an existing attorney-client relationship, *Sterner, supra,* at 1566 (citing the Board's decision on appeal) and (2) reasonable. *Allen v. United States Postal Serv.*, 2 MSPB 582, 586 (1980). Because the Board's findings in the instant case satisfy all of these requirements, we do not determine the "minimum" requirements to establish a fee award. Rather, the principal issue in this appeal concerns only the Board's construction of the statutory "warranted in the interest of justice" standard.

**8.** This petition was the first document the OPM filed with the Board during the entire disposition of the Scarborough application.

**9.** MSPB Docket No. DC83L8010270 (July 19, 1982), 1982 FMSR 7033.

**10.** *See* Part III *infra.*

ment stems from § 8347(c), which provides that administrative determinations as to disability retirement benefits shall be "final and conclusive and are not subject to [judicial] review." Those decisions construing § 8347(c), however, do not control our jurisdictional determination in the instant case. Scarborough appeals from a Board decision denying an award of attorney fees, not from an order upholding the OPM's denial of disability retirement benefits. In other words, the Board acted pursuant to § 7701(g)(1), not § 8347(d)(1). Therefore, § 8347(c)'s "finality clause" is inapplicable. We hold that judicial review is appropriate under § 7703(c). *See Lindahl v. OPM,* 718 F.2d 391, 408 (Fed.Cir.1983) (en banc) (Smith, J., dissenting) (citing *Sterner, supra* note 7); *Bennett, supra* note 7, 699 F.2d at 1141 (citing §§ 7701, 7703).[11]

Our decision that § 7703 confers jurisdiction over this appeal is not altered by the amendment to § 7703(b)(1) contained in the Federal Court Improvement Act of 1982 (FCIA), 28 U.S.C. § 1295(a)(9), P.L. 97–164, 96 Stat. 25, § 144. Former § 7703(b)(1) provided that petitions to review final orders or decisions of the Board could be filed in any regional court of appeals. Under the FCIA, the United States Court of Appeals for the Federal Circuit now has exclusive jurisdiction over such appeals. The FCIA did not become effective, however, until October 1, 1982. Because Scarborough filed his petition for review before this date,[12] jurisdiction existed in the Eleventh Circuit at the time Scarborough filed the petition, and we retain such jurisdiction in all cases filed before the FCIA's effective date. *See Lancellotti, supra* note 11, 704 F.2d at 98. *See also Onnen v. United States,* 524 F.Supp. 1079, 1084 n. 8 (D.Neb.1981) (FCIA inapplicable to claims filed with old Civil Service Commission).

**11.** Even if this case were characterized as a disability retirement rather than an attorney fees appeal, judicial review would be appropriate under our decision in *McCard v. MSPB,* 702 F.2d 978 (11th Cir.1983). In *McCard,* by which we are bound, we adopted the "Scroggins formula" of review, crystalized in *Scroggins v. United States,* 397 F.2d 295, 297, 184 Ct.Cl. 530 (Ct.Cl.), *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)), which permits judicial review of the Board's disability retirement decisions in only three circumstances. 702 F.2d at 983. Under the "Scroggins formula," one of the three circumstances rendering judicial review appropriate is the "misconstruction of the governing legislation." In this case, therefore, judicial review would be appropriate because both the OPM's and the Board's positions are based upon misconstructions of the governing legislation. First, the OPM unduly restricts the fee authorization provision when it contends that Chapter 77's authorization of attorney fee awards does not extend to Chapter 83 disability retirement petitions. *See* Part IV.B, *infra.* Likewise, neither logic nor the language of § 7701(g) supports the Board's determination that Congress intended attorney fee awards to be made *only* in OPM initiated (involuntary) retirement actions. *See* Part IV.C, *infra.* As relevant to this appeal, the "Scroggins formula" and its progeny is discussed at length in Part III, *infra.*

In oral argument, the OPM suggested that *Lancellotti v. OPM,* 704 F.2d 91 (3d Cir.1983), properly sets out the basis for the regional courts of appeals' jurisdiction over appeals from MSPB retirement decisions. In *Lancellot-*

*ti,* the court held that, although neither §§ 7703 nor 8347 authorized judicial review of Board decisions, the general provisions of 28 U.S.C. § 2342(6) conferred jurisdiction over MSPB final orders or decisions. 704 F.2d at 95–98. *But see Campbell v. OPM,* 694 F.2d 305, 308–09 n. 5 (3d Cir.1982) (§ 2342(6) vests the regional court of appeals with exclusive jurisdiction to hear MSPB orders for which judicial review is already available, rather than authorizing judicial review of matters not contemplated by the CSRA). We do not decide whether or not the *Lancellotti* approach presents the correct disposition of "retirement" appeals. First, *Lancellotti* is not on point. *Lancellotti* involved an appeal from a Board decision affirming the OPM's termination of a federal civil servant's disability annuity; hence, that case *was* a "retirement appeal." The instant case, however, is an appeal from a denial of an attorneys fee award and, therefore, is *not* a "retirement appeal." *See* text. Second, even if this case were characterized as a "retirement" appeal, the *Lancellotti* approach would be unnecessary in view of the law in this circuit. The *Lancellotti* decision seems to be an attempt to limit the effect of the Third Circuit's decision in *Campbell, supra,* in which the court rejected the "Scroggins formula" of judicial review. *See Lancellotti, supra,* 704 F.2d at 97. Because we rejected the *Campbell* court's reasoning in *McCard, supra,* we need not reach the issues addressed by the *Lancellotti* court.

**12.** Scarborough filed his petition on August 26, 1982.

## B. *The Standard of Review*

■ As a general rule, an administrative agency's construction of the statute it administers is entitled to substantial deference. *United States v. Rutherford,* 442 U.S. 544, 554, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68, 77 (1979). Consequently, the Board contends that its construction of the CSRA provisions in question is entitled to substantial deference, because the Board is charged with administering those statutes. *See* Brief for the Intervenor, at 6. Case law indicates, however, that a stricter standard of review is appropriate in this case. Courts have consistently engaged in more strenuous review where the disputed order or decision directly involves the construction of the organic statute under which the agency operates. *See, e.g., National Distributing Co. v. United States Treasury Dep't,* 626 F.2d 997, 1019 (D.C.Cir.1980).

Under this view, neither question of statutory construction presented in this case warrants substantial deference to the Board's interpretation. First, the question whether Chapter 77's attorney fees provision is applicable in Chapter 83 civil service disability retirement appeals is analogous to the issue considered by the District of Columbia Circuit in *Citizens to Save Spencer County v. EPA,* 600 F.2d 844 (D.C.Cir.1979), and *Atwell v. MSPB,* 670 F.2d 272 (D.C.Cir. 1981). In those cases, the court concluded that, "on review of an agency's attempt to reconcile arguably conflicting statutory provisions, the proper judicial role was to ensure that the agency has effected an appropriate harmonization of the conflicting provisions while remaining within the bounds of [its] statutory authority." 600 F.2d at 871; 670 F.2d at 282. Therefore, the court's review should be "sufficiently strict to ensure that the MSPB is assuming the appellate role Congress intended it to have under the CSRA." 670 F.2d at 282. Secondly, the Board's interpretation of § 7701(g)(1), which limits its application to involuntary retirement appeals, involves "a narrow legal issue that is readily suscepti-

ble of judicial resolution." *See Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 120, 100 S.Ct. 2051, 2062, 64 L.Ed.2d 766, 780 (1980). We are not faced with "a situation in which there has been long-standing contemporaneous administrative construction upon which those subject to the jurisdiction of the agency would have been likely to rely." *Id.* Indeed, the *Vergagni* decision, which prompted the Board's reversal of its decision regarding attorney fees in this case, was decided after Scarborough requested attorney fees. Therefore, the *Vergagni* decision is not an administrative interpretation of the CSRA to which we should afford a high degree of deference. *See Schramm v. Department of Health and Human Services,* 682 F.2d 85, 90 n. 11 (3d Cir.1982).

## III. LEGAL BACKGROUND

The instant case is not the first time this court has been called upon to examine the interaction between Chapter 77 and Chapter 83 in a disability retirement action. In *McCard, supra* note 11, 702 F.2d 978, we attempted to reconcile the Chapters' apparently conflicting judicial review provisions. As explained earlier,[13] the Board has jurisdiction over an appeal from an OPM order affecting disability retirement benefits.[14] The question whether the Board's decision is then reviewable by a federal court has split sharply the Circuit Courts of Appeal. In deciding this issue, the courts uniformly addressed three factors. First, § 7703(c) provides the general standard of judicial review for "any agency action." Second, former § 8347(c) empowered the OPM to determine questions of retirement disability and provided that such decisions were "final and conclusive and ... not subject to review." 5 U.S.C. § 8347(c) (1976) (amended 1980). Third, the "*Scroggins* formula," the oft-cited attempt to reconcile § 7703 and former § 8347(c), held that the "finality" clause merely limited, rather than barred, judicial review otherwise provided by

---

**13.** Part II.A, *supra.*

**14.** Whether Chapter 83 or 77 governs that appeal is discussed in Part IV.A, *infra.*

§ 7703(c). Under *Scroggins,* review was permitted in disability cases "where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.' "[15]

After 1980, courts addressing the reviewability of MSPB disability retirement decisions uniformly considered a fourth factor: the 1980 amendments to § 8347.[16] These amendments qualified § 8347(c)'s finality clause; OPM disability retirement decisions were "final and conclusive and . . . not subject to review" *except* "to the extent provided in [new] subsection (d)." Subparagraph one of subsection (d) simply restated verbatim former subsection (d):

(1) an administrative action or order affecting the rights or interests of an individual . . . under [subchapter III of Chapter 83 of Title 5, United States Code] may be appealed to the [MSPB] under procedures prescribed by the Board.

Subparagraph two, however, was a new section covering mental disability exclusively:

(2) In the case of any individual found by the [OPM] to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application by an agency for purposes of disability retirement under section 8337(a) of this title, the procedures under section 7701 of this

title shall apply and the decision of the Board *shall be subject to judicial review under section 7703* of this title.

(emphasis supplied).

The 1980 amendment was a pivotal point in the circuit courts' recent analysis of the judicial review question. Some courts determined that the amendment clearly evidenced Congress' intent to preclude judicial review in all but mental disability cases.[17] These courts reasoned, first, that the finality clause in § 8347(c) is unambiguous. Second, if Congress had intended to provide for judicial review under § 7703, it would have employed the same language in (d)(1) as it did in (d)(2). Thus, under this view, mental disability is an *exception* to the general rule established in subsection (c): the OPM's decisions are final and conclusive and . . . not subject to review." Because (d)(1) contains no such exception, OPM decisions concerning physical disability are nonreviewable.

Other courts, including this circuit, have viewed the amendment's effect differently.[18] Adhering to the "*Scroggins* formula" which permitted limited judicial review under certain circumstances, these courts perceived subsection (d)(2) as an *expansion* of the already existing *Scroggins*-type review rather than as an exception to the finality clause. The courts reasoned that Congress was aware of the "*Scroggins* formula" when it amended subsection (d). By simply redesignating that provision as subsection

---

**15.** *Scroggins,* 397 F.2d at 297, *quoting Gaines v. United States,* 158 Ct.Cl. 497, 502, *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962). *See also Polos v. United States,* 621 F.2d 385, 391 n. 9 (Ct.Cl.1980); *Fancher v. United States,* 588 F.2d 803, 806 (Ct.Cl.1978); *Allen v. United States,* 571 F.2d 14, 17 (Ct.Cl. 1978); *McFarland v. United States,* 517 F.2d 938, 942–43, 207 Ct.Cl. 38 (1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *McGlasson v. United States,* 397 F.2d 303, 307, 184 Ct.Cl. 542 (1968); *Matricciana v. Hampton,* 416 F.Supp. 288, 289 (D.Md.1976); *Cantrell v. United States,* 240 F.Supp. 851, 853 (W.D.S.C.1965), *aff'd,* 356 F.2d 915 (4th Cir. 1966). The genesis of the "*Scroggins* formula" actually predates the *Gaines* decision quoted by the court. *See Smith v. Dulles,* 236 F.2d 739,

742 (D.C.Cir.), *cert. denied,* 352 U.S. 955, 77 S.Ct. 329, 1 L.Ed.2d 244 (1956).

**16.** Pub.L. 96–500, §§ 1(a), (b), *codified at* 5 U.S.C. §§ 8347(c), d(1), d(2).

**17.** *Lindahl v. OPM,* 718 F.2d 391 (Fed.Cir.1983) (en banc); *Chase v. OPM,* 695 F.2d 790 (4th Cir.1982); *Campbell v. OPM,* 694 F.2d 305 (3d Cir.1982); *Morgan v. OPM,* 675 F.2d 196 (8th Cir.1982). The Third Circuit qualified its *Campbell* decision in *Lancellotti, supra* note 11, 704 F.2d 91.

**18.** *See McCard v. MSPB,* 690 F.2d 731 (11th Cir.1983); *Pitzak v. OPM,* 710 F.2d 1476 (10th Cir.1983); *Turner v. OPM,* 707 F.2d 1499 (D.C. Cir.1983); *Parodi v. MSPB,* 690 F.2d 731 (9th Cir.1982).

(d)(1), Congress did nothing to abrogate the "judicial gloss" attached to former subsection (d). Thus, the *Scroggins*-type review continued for physical disability under (d)(1), while review under § 7703 was instated for mental disability.

The circuit courts' disagreement in the judicial review cases reveals the complexity of the statutory scheme Congress created in the CSRA.[19] Against this background, we turn to the instant appeal.

## IV. ATTORNEY FEES IN DISABILITY CASES

■ In the instant case, we must again attempt to harmonize the appellate framework established in Chapters 77 and 83. In so doing, we must be mindful of the contrast between the rules of statutory construction which operated in *McCard*, where petitioner sought judicial review, and the applicable rule in this case, where petitioner seeks a statutory award of attorney fees. In determining whether a statute authorizes judicial review, a court must resolve ambiguities in favor of review: "Only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting *Rusk v. Cort,* 369 U.S. 367, 369, 380, 82 S.Ct. 787, 788, 794, 7 L.Ed.2d 809, 811, 817 (1962)). *See Turner, supra,* 707 F.2d 1499 (quoting *Abbott* in a civil service disability retirement case); *McCard, supra,* 702 F.2d at 981; *Parodi, supra,* 690 F.2d at 735. In this case, however, the inferences cut in the opposite direction. A statutory award of attorney's fees against a

government agency is a waiver of sovereign immunity. Therefore, an assessment of attorney's fees against a government agency "is not permissible in the absence of explicit statutory authority that may serve as a waiver of the Government's traditional immunity." *Dawson v. MSPB,* 712 F.2d 264, 268 (7th Cir.1983) (quoting *E.E.O.C. v. Kenosha Unified School District,* 620 F.2d 1220, 1227 (7th Cir.1980)). *See also Williams v. OPM,* 718 F.2d 1553, 1556–57 (Fed. Cir.1983); *N.A.A.C.P. v. Civiletti,* 609 F.2d 514 (D.C.Cir.1979).

■ The language of § 7701(g)(1) is quite explicit:

[T]he Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

While this waiver of sovereign immunity clearly applies in any adverse action appeal governed by Chapter 77, *see Williams, supra,* 718 F.2d at 1555, a more difficult question would be whether § 7701(g) applies to appeals governed by other chapters.[20] We need address this latter question, however, only if Chapter 83, rather than Chapter 77, governs appeals from disability retirement

---

**19.** Unfortunately, the difficult legal questions presented by this complexity is antithetical to one of the Act's purposes, as identified by President Carter in a message to Congress, "to reduce red tape and costly delay in the present personnel system." President Carter's message appears in H.R.Rep. No. 1403, 95th Cong., 2d Sess. 2–3 (1978), *reprinted in* II House Comm. on Post Office and Civil Service, 95th Cong., 1st Sess., Legislative History of the CSRA of 1978, Vol. I, at 639–40 (1979).

**20.** The circuits have disagreed in deciding whether § 7701(g)(1)'s waiver of sovereign immunity extends beyond Chapter 77 appeals. *Compare Frazier v. Merit Systems Protection Board,* 672 F.2d 150 (D.C.Cir.1982) (§ 7701(g)(1) authorizes the Board to award attorney fees in corrective action proceedings under § 1206), *with Dawson v. Merit Systems Protection Board,* 712 F.2d 264 (7th Cir.1983) (Chapter 83 governs disability retirement actions; therefore, no attorney fees awardable under § 7701(g)(1)), *and Williams v. OPM,* 718 F.2d 1553 (Fed.Cir.1983) (same).

benefit denials. Therefore, before engaging in any analysis of § 7701(g)(1)'s application outside the context of Chapter 77 appeals, we first consider whether § 7701(a) or § 8347(d) governs appeals from civil service disability retirement decisions.

### A. *Chapter 77 vs. Chapter 83 Appeals*

Section 7701 provides that "[a]n employee, or applicant for employment, may submit an appeal to the [MSPB] from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a). The MSPB contends that this section's broad language encompasses all appeals, except those containing discrimination claims.[21] The OPM, however, contends that Chapter 77 does not control appeals from disability retirement decisions. Rather, the OPM points to § 8347(d) as the governing provision. As relevant, § 8347(d) provides that "an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter may be appealed to the [MSPB] under procedures prescribed by the Board." 5 U.S.C. § 8347(d)(1). We now examine the statutory scheme established in Title 5 to determine the governing provision.

It is tempting to accept the MSPB's view that § 7701(a) governs all nondiscrimination appeals. Both Chapter 77 and Chapter 83 appeals existed under prior law. The scope of former § 7701, however, was limited. Former § 7701 created the right of appeal in a "preference eligible employee" as defined by former § 7511. Furthermore, a preference eligible employee could appeal only "adverse actions" under former § 7512.[22] These references to specific claimants (preference eligible employees) and specific claims (adverse actions) established the scope of former Chapter 77 appeals. *See* Explanatory Note to 5 U.S.C. § 7701 (1976) (amended).

The CSRA amended former § 7701 by substituting the phrase "employee or applicant for employment" for "preference eligible employee,"[23] and expanding the section's application from "adverse actions" to "any action."[24] Congress enacted new § 7513(d) to sustain preference eligible employees' right to appeal adverse actions. These linguistic changes reflect Congress' intent to establish a coordinated system of appellate procedure.[25] Chapter 77, by its

---

**21.** Section 7702 covers appeals in discrimination cases.

**22.** For a concise discussion of the significance of the phrase "adverse action" under former and current law, *see Frazier, supra,* 672 F.2d at 155 n. 9 (quoting *Atwell v. MSPB,* 670 F.2d 272, 280 n. 11 (D.C.Cir.1981)).

**23.** This change clearly expanded the scope of Chapter 77 appeals. Before the CSRA, a competitive service employee had no statutory right to appeal an adverse agency action to the Board. S.Rep. No. 969, 95th Cong., 2d Sess. 44, *reprinted in* [1978] U.S.Code Cong. & Ad. News 2723, 2766. The right of appeal now extends to both employees in the competitive service *and* preference eligibles. *Compare* 5 U.S.C. § 7511(a)(1)(A–B) (Supp. IV 1980) (defining "employee" for purposes of subchapter 7501 *et seq.*) *with Piskadlo v. Veterans' Admin., MSPB,* 668 F.2d 82, 83 (1st Cir.1982) ("employee" definition in § 7511(a)(1) delimits the standing requirements of adverse action appeals governed by § 7701(a)).

**24.** Whether this change expanded the scope of Chapter 77 appeals is questionable. *See* note 22, *supra.*

**25.** Chapter 77 does not confer on federal employees any right to challenge personnel decisions. *Cf. Perez v. Army & Air Force Ex. Serv.,* 680 F.2d 779, 789–90 (D.C.Cir.1982) (§ 7702 assumes, and does not grant, the right of appeal). *But see Frazier v. MSPB,* 672 F.2d 150, 155 (D.C.Cir.1982). Rather, § 7701 presumes the existence of such a right, *cf. Perez, supra,* and merely gives the MSPB appellate jurisdiction over matters appealable "under any law, rule, or regulation." *See Piskadlo v. Veterans' Administration,* 668 F.2d 82, 83 (1st Cir.1981). In other words, Congress enacted new § 7701 to coordinate, under a unified system of appellate procedure, the multitude of individual employees' challenges to the various federal agencies' adverse personnel actions. *See* Senate Rep. No. 95–969, 95th Cong., 2d Sess. 53, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2723, 2775 ("Section 7701 provides for *the processing of* . . . appeals within the jurisdiction of the [MSPB].") (emphasis supplied) [hereinafter referred to as Senate Report].

**810**

express terms, governs "any action ... appealable to the Board under *any law, rule, or regulation.*" 5 U.S.C. § 7701(a) (emphasis added). Just as an adverse action against a preference eligible employee is now appealable under § 7513(d), a denial of disability retirement benefits is appealable to the MSPB under § 8347(d). And just as Chapter 77 governs appeals pursuant to § 7513(d), *see Williams v. Department of the Army,* 651 F.2d 243, 244 (4th Cir.1981), one could conclude that Chapter 77 also governs civil service disability retirement appeals under § 8347(d)(1). Under our more probing standard of review,[26] however, our careful reading of the statute leads us to an opposite conclusion.

If we were to focus only on subparagraph (1) of § 8347(d), we would attach no significance to the mere fact that § 7513(d) contains a specific reference to § 7701, while § 8347(d)(1) contains no such reference. With or without the reference to § 7701, both could be viewed as "appealable to the Board under any law, rule, or regulation" within the requirements of § 7701(a).[27] We do not, however, examine § 8347(d)(1) in isolation. The 1980 amendment to § 8347(d), discussed in part III, *supra,* redesignated original subsection (d) as subparagraph (1)[28] and created subparagraph (2), which provides:

> In the case of any individual found by the [OPM] to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application by an agency for purposes of disability retirement un-

der section 8337(a) of this title, the procedures *under section 7701* of this title shall apply....

Pub.L. 96–500, § 1(b), codified at 5 U.S.C. § 8347(d)(2) (emphasis supplied). In light of this glaring conflict between d(2), which expressly refers to § 7701, and d(1), which contains no such reference, we do not accept the MSPB's suggestion that § 7701 governs § 8347(d)(1) appeals. A more reasonable construction of the statutory framework would be that the MSPB reviews mental disability ((d)(2)) under § 7701(a) but reviews physical disability ((d)(1)) under (d)(1) itself, with procedures prescribed by the Board. The explicit difference in the language of § 8347(d)(1) from that of subparagraph (2) creates such an obvious conflict with § 7701(a)'s language that the inapplicability of § 7701(a) is plain. *Lindahl, supra* note 17, 718 F.2d at 409 (Smith, J., dissenting).

This conclusion is consistent with the *Scroggins* line of cases, Part III, *supra,* which held that judicial review exists for both § 8347(d)(1) and (d)(2) appeals, even though subparagraph (1) does not, but (d)(2) does, refer to § 7703, and § 8347(c) expressly provides that the OPM's decisions "are final and ... not subject to review." Those cases recognized that the difference in language between (d)(1) and (d)(2) affects the respective subparagraphs' interaction with § 8347(c)'s limitation on judicial review. For example, in *Parodi, supra,* which we relied on in *McCard, supra,* the court said that the explicit reference to

**26.** *See* Part II.B, *supra.*

**27.** "Section 7701(a) is expressly made the jurisdictional basis for actions under sections 4303(e) (actions based on unacceptable performance), 7513(d) (adverse actions taken to promote the efficiency of the service), 7121(e) (grievance procedures), 7543(d) (actions against senior executives), and 3593 and 3595 (reinstatement or reduction in force in the Senior Executive Service). Section 5335(c) (withholding of periodic step increase), though it mentions no jurisdictional basis, has been held to be appealable under section 7701. *Meyer v. Department of Health & Human Services,* 666 F.2d 540, 544–45 (Ct.Cl.1981)." *Lindahl, supra* note 17, 718 F.2d at 408 (Smith, J., dissenting).

Appellate jurisdiction is also conferred upon the MSPB by regulation. 5 C.F.R. § 1201.-3(a)(6) provides that the Board's appellate jurisdiction includes "determinations relating to disability retirement...." Therefore, even if we were concerned about the absence of an express reference to § 7701(a) in § 8347(d), the OPM's denial of disability retirement benefits could be viewed as appealable to the Board "under ... regulation" within the meaning of § 7701(a).

**28.** For the text of current § 8347(d)(1), *see* Part III, p. 806, *supra.*

§ 7703 in the 1980 amendment which created subparagraph (2) "expands [the limited] judicial review beyond that provided by *Scroggins . . . .*" 690 F.2d at 735. *See also* 702 F.2d at 982. In the instant case, however, we have no analogue to the *Scroggins* line of cases suggesting a common law basis for application of § 7701(a) procedures to § 8347(d)(1) appeal. Indeed, the "judicial gloss" on former § 7701[29] would suggest otherwise. *See Murphy v. Wilson,* 236 F.2d 737, 738 (D.C.Cir.1956) (preference eligible employee not entitled to procedures prescribed in Veteran's Preference Act (VPA) (former § 7701) before being involuntarily retired because VPA "has nothing whatever to do with . . . retirement for total disability within the meaning of the Civil Service Retirement Act"). Thus, our consideration of whether judicial review is appropriate in § 8347(d)(1) cases is a wholly different question from whether § 7701(a) governs § 8347(d)(1) appeals. Accordingly, we hold that Chapter 83 governs appeals from disability retirement decisions.[30]

### B. The Applicability of § 7701(g) to Chapter 83 Appeals

■ Although we agree with the Seventh[31] and Federal[32] Circuits that Chapter 83 governs appeals from disability retirement decisions,[33] we do not embrace the portions of those opinions that limit the scope of § 7701(g)(1) to Chapter 77 appeals. In *Dawson v. MSPB,* 712 F.2d 264 (7th Cir.1983), *petition for rehearing en banc denied,* relied upon by the OPM in this case, the court held that Congress has not enacted any "explicit statutory language unequivocally waiving the sovereign immunity of the United States with respect to granting attorney's fees to a litigant who is appealing a disability retirement decision of the [OPM]." After reviewing various statutory headings, the court apparently surmised that each subpart under Part III of Title 5 is a self-contained unit operating independently of the others. Hence, the *Dawson* court determined that retirement actions are governed solely by Chapter 83 of Subpart G, and that Chapter 77 of Subpart F deals only with "labor-management and employee relations." The court, therefore, reasoned that § 8347(d) exclusively governs all "civil service retirement" appeals arising "out of an OPM decision denying [an] application for civil service retirement disability benefits . . . ." *Id.* at 268–69. Because Chapter 83 contains no attorney's fees provision, the court concluded that the Board has no statutory authority to award attorney's fees to disability retirement applicants. *Id.* at 269. *See also Williams, supra,* 718 F.2d at 1556–57.

■ We decline to follow the *Dawson* court's reasoning to its ultimate conclusion for several reasons. In the first place, *Dawson's* reliance upon headings to determine the meaning of a statute is not a favored method of statutory construction. Section headings cannot limit the plain meaning of the text and may be utilized to interpret a statute, if at all, only where the statute is ambiguous. *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.,* 331 U.S. 519, 529, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947); *Frazier v. MSPB,* 672 F.2d 150, 160 (D.C.Cir.1983); *United States v. Roemer,* 514 F.2d 1377, 1380 (2d Cir.1975) (quoting *Brotherhood*). *E.g., Russ v. Wilkins,* 624 F.2d 914, 922 (9th Cir.1980); *Tibke v. Immigration and Naturalization Service,* 335 F.2d 42, 45 (2d Cir.1964); *Motor Coach Industries, Inc. v. United States,* 536 F.2d 930, 936, 210 Ct.Cl. 188 (1976). *See Committee to Preserve Am. Color Television v. United States,* 527 F.Supp. 341, 348 (C.I.T.1981).

---

29. Pub.L. 89–554, 80 Stat. 530 (Sept. 6, 1966) (amended, Pub.L. 95–454, Title II § 205, Oct. 13, 1978, 92 Stat. 1138; Pub.L. 96–54, § 2(a)(45), Aug. 14, 1979, 93 Stat. 384).

30. Because of this holding, the OPM remains the proper respondent. 5 U.S.C. § 7703(a)(2).

31. *Dawson v. MSPB,* 712 F.2d 264 (7th Cir. 1983).

32. *Williams v. OPM,* 718 F.2d 1553 (Fed.Cir. 1983).

33. *See* Part IV.A, *supra.* Our reason for that conclusion lies almost entirely within the wording of 8347(d)(1) and (2) rather than any of the additional reasons offered by those courts.

In *Color Television,* for example, the appellant urged the court to limit the Tariff Act's broad statutory language, "any claim arising under the customs laws,"[34] to "claims for fines, penalties and forfeitures." In support of its argument, appellant referred the court to the statutory heading. The court, however, refused to resort to section headings, because the text was "not ambiguous." *Id.* at 348. In the instant case, the statute involved presents equally unambiguous language. Just as the Tariff Act referred to "any claim," 19 U.S.C. § 1617, the CSRA authorizes the MSPB to award attorney fees in "any case" in which the agency's action was clearly without merit. 5 U.S.C. § 7701(g)(1). Under these circumstances, resort to section headings to contradict the plain language of the statute is inappropriate. *Brotherhood, supra; Frazier, supra.*

Apart from headings, *Dawson* relied on the placement of retirement matters in Subpart G and labor-management and employee relations in Subpart F to suggest that Chapter 83, of Subpart G, and Chapter 77, of Subpart F, are exclusive of one another. In reality, however, the various Civil Service chapters and subparts are extremely interrelated. In *Frazier v. MSPB,* 672 F.2d 150 (D.C.Cir.1982), an employee sought attorney fees under § 7701(g)(1) after prevailing in a § 1206 corrective action proceeding. The Special Counsel had initiated the petition under 5 U.S.C. § 1206(c)(1)(B) after his investigation substantiated the claimant's allegations that a prohibited personnel practice had been engaged in. Although the Board permitted the claimant to intervene on his own behalf, the MSPB concluded that § 7701(g)(1)'s fee authorization did not extend to corrective action proceedings. The court of appeals reversed, concluding that

> while the placement and history of the provision indicate that Congress did not expect fees questions to arise in corrective action proceedings, the intent of section 7701(g) together with the statutory scheme clearly give the Board the flexibility to award fees in appropriate corrective action cases.

672 F.2d at 170. To us, the *Frazier* decision presents a more viable scenario of the statutory scheme than does *Dawson.*[35]

Our final reason for rejecting the OPM's suggestion that we adopt the *Dawson* approach stems from that court's use of legislative history. "[W]hen confronted with a statute that is clear on its face, the courts do not look to legislative history as a guide to its meaning, unless from the legislative history it is clear that Congress did not intend to employ the words it used." *See Federal Election Commission v. Florida for Kennedy Committee,* 681 F.2d 1281, 1290 n. 2 (11th Cir.1982) (Clark, J., dissenting) (and cases cited therein). *See also Dickerson v. New Banner Inst.,* —— U.S. ——, ——, 103 S.Ct. 986, 990, 74 L.Ed.2d 845, 852

---

**34.** 19 U.S.C. § 1617.

**35.** Another example of the interaction between chapters is *Murray v. Defense Mapping Agency,* 1 MSPB 338 (1980), in which a government employee sought to redress his forced retirement. Even though the case involved "retirement" (a Chapter 83 action), the Board determined that "an involuntary retirement is tantamount to a removal" and, therefore, is an adverse action for purposes of § 7512(1). Because forced retirement is an adverse action, § 7513(d) authorized the employee's appeal to the MSPB. Finally, § 7701(a) gave the Board jurisdiction over the matter. In light of this disposition of a "retirement" case, *Dawson's* suggestion that the various chapters operate exclusively of one another is clearly untenable. *See generally* Cermak, *Appellate Jurisdiction of the Merit Systems Protection Board and the Federal Courts under the Civil Service Reform Act of 1978: Defining the Boundaries of Review,* 35 Ad.L.Rev. 105, 113–18 (1983) (discussing the variety of cases which constitute "adverse agency actions"). We do not suggest that retirement benefit claims are adverse actions. *See Lindahl, supra,* 718 F.2d at 397–98. Rather, we simply attempt to demonstrate the substantial interplay between the various Civil Service chapters.

While we question the *Dawson* court's evaluation of the statutory scheme, we note that, like the use of section headings, resort to placement as an interpretative aid is inappropriate given the clarity of Congress' language. *Frazier, supra,* 672 F.2d at 169 ("Board's parsing of [§ 7701(g)(1)] fails to disclose the kinds of linguistic ambiguities that require resort to interpretative aids like placement...."). .

(1983), *quoting United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (*quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766, 772 (1980)); *United States v. Bryant,* 671 F.2d 450, 453 (11th Cir.1982) (and cases cited therein). We reiterate that the statute clearly refers to "any case," 5 U.S.C. § 7701(g)(1), and we find nothing in the legislative history which makes it clear that Congress did not intend to use the broad language it enacted. Furthermore, the legislative history cited by the *Dawson* court to buttress its decision that § 7701(g)(1) does not extend to § 8347(d) disability retirement appeals pertains to the Senate bill (S.2640), which was not adopted. Section 7701(g)(1), as enacted, represents a compromise between the House and Senate proposals and contains a more liberal authorization of attorney fee awards:

> The Senate bill [S. 2640] authorizes attorneys' fees to be awarded ... [when] ... the agency's action was taken in bad faith....
>
> The House Amendment authorizes attorneys' fees in any case where ... payment "is warranted" ....
>
> The conference substitute ... authorizes attorneys' fees in cases where ... fees are warranted in the interest of justice....

*See* House Conf.Rep. No. 95–1717, 95th Cong., 2d Sess. 142, *reprinted in* [1978] U.S. Code Cong. & Ad.News 2860, 2876 [hereinafter referred to as House Conf.Rep.]. Our examination of the *relevant* legislative history reveals no congressional intent to exclude disability retirement cases from the class of cases in which attorney fees would be "warranted in the interest of justice." Nor does the express language of the statute impose any restriction on recovery with regard to the nature of the claim involved. *See Frazier, supra,* 672 F.2d at 170 (fees

provision applicable in "any proceeding in which an aggrieved employee seeks to vindicate rights conferred by the [CSRA]"). Therefore, we follow the rule that "[w]here Congress in plain language has expressed its intention, and the legislative history does not demonstrate a contrary purpose, we are bound to follow the statutory provisions as written." *Schramm v. Department of Health and Human Services,* 682 F.2d 85, 91 (3d Cir.1982) (construing the CSRA).[36]

Nor are we persuaded by the Federal Circuit's additional reasons offered in support of the *Dawson* court's implicit conclusion that § 7701(g)(1) does not "reach over" to § 8347(d) appeals. Although we agree that "statutory language connecting section 7701(g)(1) to 8347(d)(1) would need to be crystal clear," *see Williams, supra,* 718 F.2d at 1557, we find Congress' language unambiguous: the Board may award attorney fees when payment is "warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in ... or any case in which the agency's action was clearly without merit." 5 U.S.C. § 7701(g)(1). The Federal Circuit, however, finds the scope of the provision fatally ambiguous for several reasons.

First, the *Williams* court acknowledged that, as *Frazier* correctly held, § 7701(g)(1) extends beyond Chapter 77 appeals. The court distinguished *Frazier,* however, noting that *Frazier* involved a "prohibited personnel practice," and § 7701(g)(1) specifically permits fee awards in cases involving "prohibited personnel practices." *Williams, supra,* 718 F.2d at 1555–56. This distinction is unsound. For one, the *Williams* court's suggestion that the fee award in *Frazier* can be explained simply on the basis that *Frazier* involved a "prohibited personnel practice" ignores the facts and reasoning that underlie the holding of that case. The question presented in *Frazier* was not simply whether attorney fees were awardable

---

**36.** In reaching this conclusion, we do not hold that an award of fees is permitted simply because an award is not prohibited; such reasoning would clearly be erroneous. *See Fitzgerald v. United States Civil Serv. Comm'n,* 554 F.2d 1186, 1189 (D.C.Cir.1977). Rather, the plain language of the statute, when viewed in its proper context, is sufficient to constitute a waiver of sovereign immunity, and nothing in the legislative history contradicts that language.

in "prohibited personnel practice" cases, but whether § 7701(g)(1) authorized the Board to award fees to an employee who had been permitted to intervene in a corrective action proceeding under § 1206(c) where the Board elected to hold a nonrequired hearing pursuant to § 1206(a). In determining that § 7701(g)(1)'s waiver of sovereign immunity extended to such a case, the *Frazier* court did, as the *Williams* court pointed out, rely on the fee provision's express reference to "any case in which a prohibited personnel practice was engaged in . . . ." 672 F.2d at 168. Close examination of that opinion, however, reveals that the court's decision turned on its construction of the words "any case," not "prohibited personnel practice." The court "[r]ead [the words 'any case'] naturally" to include "any case in which an employee or applicant for employment appears as a party," even though the party had intervened and, therefore, the case did not involve a conventional appeal, let alone a Chapter 77 appeal. 672 F.2d at 169. Likewise, we "read naturally" the words "any case" as they apply to agency "action . . . clearly without merit" and, because this case *does* involve an appeal as of right, albeit not a Chapter 77 appeal, we do not even have to go so far as the *Frazier* court did in reaching our conclusion that § 7701(g)(1)'s waiver extends to Chapter 83 appeals brought by employees or applicants for employment.

Even if *Frazier* had turned on the court's construction of "prohibited personnel prac-tice" rather than "any case," the *Williams* court's attempt to distinguish that case is unpersuasive. First, while "prohibited personnel practice" cases are expressly covered by § 7701(g)(1), the statute also expressly refers to a second classification: "any case in which the agency's action was clearly without merit." An unreasonable denial of retirement benefits could easily be encom-passed under this second classification. Second, the fact that the statute does or does not *explicitly* cover a specific class of cases is immaterial; the legislative history clearly states that "[t]he reference to these two types of cases is illustrative only and does not limit the official from awarding attorneys' fees in other kinds of cases." House Conf.Rep., *supra*, at 142, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2876.[37]

A second reason the *Williams* court refus-ed to extend § 7701(g)(1) to a Chapter 83 appeal stems from that court's concern with the conflict between Chapter 77's reference to "employees or applicants for employ-ment" and Chapter 83's reference to "indi-viduals." Apparently, the Federal Circuit was persuaded by the OPM's contention that although, on its face, § 7701(g)(1) seems to authorize the MSPB to award attorney fees in civil service retirement ap-peals, a comparison of this section with 5 U.S.C. § 8347(d), which governs civil service disability retirement appeals,[38] reveals that Congress did not intend to include chal-lenges to disability retirement decisions

---

**37.** Furthermore, Congress' specific reference to "prohibited personnel practices" and general reference to other types of cases is completely understandable in light of the history and na-ture of "prohibited personnel practice" cases. "Prohibited personnel practices" are statutorily defined (5 U.S.C. § 2302) personnel actions which give rise to disciplinary action. While Chapter 77 and 83 appeals existed under prior law, the CSRA "represents the first across-the-board codification of . . . prohibited personnel practices." Senate Rep., *supra* note 25, at 18, [1978] U.S.Code Cong. & Ad.News 2740. And while such appeals operate within the conven-tional appellate framework, a prohibited per-sonnel practice claim can be raised in a number of ways: as a defense in a disciplinary or other action over which the Merit Systems Protection Board has jurisdiction, through the Office of Special Counsel, through negotiated grievance procedures, and, in certain circumstances, as a part of a complaint alleging illegal discrimina-tion. *See* Vaughn, *Statutory Protection of Whistleblowers in the Federal Executive Branch*, 1982 U.Ill.L.Rev. 615, 647–58 (discuss-ing the methods of raising a claim of reprisal, a prohibited personnel practice). Thus, we view § 7701(g)(1)'s two illustrations—prohibited personnel practices and agency action without merit—as a neat way of conveying that attor-ney fees are available whether the case is presented to the Board through traditional channels, such as Chapter 77 and 83 appeals, or through one of the possible channels presented by the newly codified prohibited per-sonnel practice claims.

**38.** *See* part III.A., *supra*.

among the category of cases in which the MSPB could award attorney fees. As relevant, § 8347(d)(1) provides:

> [A]n administrative action or order affecting the rights or interests of *an individual* ... under this subchapter [subchapter III of Chapter 83 of Title 5, United States Code] may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board.

(emphasis added). The term "individual" used in § 8347(d)(1) clearly contemplates a broader class of persons than does § 7701(g)(1)'s reference to "employees or applicants for employment." *Williams, supra,* 718 F.2d at 1556. Indeed, under the Civil Service Retirement Act, *see* 5 U.S.C. § 8346(a), OPM decisions affect "annuitants," "survivors," and other persons entitled to lump-sum payments under the Act, *see* 5 U.S.C. § 8342, as well as "employees or applicants for employment." The OPM argues, therefore, that Congress could not have conceivably intended to authorize attorney fee awards to "employees or applicants for employment" while excluding other "individuals" from such an award. Respondent's Brief at 3–6. Although the Federal Circuit did not hold that the OPM's contentions were correct, it did find them sufficiently persuasive to create too much "ambiguity in the relevant statutory provisions [to] constitute a clear waiver of sovereign immunity...." *Williams, supra,* 718 F.2d at 1556.

Because the OPM's contentions are without merit, we find no such ambiguity. First, while the OPM argues that an interpretation of § 7701(g)(1) which excludes a certain class of *persons* from recovering attorney fees would be "anomalous," Respondent's Brief at 6, respondent asks us to construe the provision to exclude an entire

class of *claims* from attorney fee awards. Congress' decision to differentiate on the basis of the status of the claimant, however, seems just as reasonable as a distinction based upon the nature of the claim. Indeed, in light of the statutory language which authorizes attorney fee awards in "any case," 5 U.S.C. § 7701(g)(1), and legislative history that states that the illustrations do not preclude the official from awarding attorney fees in "other kinds of cases,"[39] a conclusion that Congress intended to distinguish between claimants, rather than claims, seems *more* reasonable.[40] Furthermore, Congress' present discrimination on the basis of the claimant's status is completely consistent with pre-CSRA law; former § 7701 granted only "preference eligible employees" a right of appeal.[41]

Secondly, the OPM overstates the extent to which the term "employee or applicant for employment," 5 U.S.C. § 7701(g)(1), differs from the term "individual," 5 U.S.C. § 8347(d). For example, the Board has construed "employee" for purposes of § 7701 to include those who succeed to an employee's rights by way of survivorship.[42] We do not hold that these words are synonymous, but certainly the difference in language does not create egregious results.

Finally, one of the major purposes of the CSRA belies the OPM's contention that Congress could not have intended to favor "employees or applicants for employment" over other "individuals." An examination of the CSRA's legislative history reveals that "[t]he major changes that the 1978 Act effected were designed to provide more extensive procedural safeguards for *employees.*" Mezines, Stein, and Gruff, *supra,* at § 5.07[3] at 5–98 (citing Senate Rep. No. 95–969, 95th Cong., 2d Sess. at 46; House

---

**39.** House Conf.Rep., *supra,* at 142, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2876.

**40.** This conclusion is further supported by the fact that where Congress did intend to distinguish on the basis of the nature of the claim in enacting the CSRA it did so explicitly. *See* 5 U.S.C. § 7702 (providing separate framework for cases involving allegations of discrimination).

**41.** *See* note 23, *supra.*

**42.** Thus, if the former employee's entitlement to back pay is at issue in an appeal and the appellant dies during the course of the proceeding, the appellant's estate may pursue the appeal. *See* 5 C.F.R. § 1201.35 (1982). *See also Sante Bario v. Department of Justice,* MSPB Docket No. DC752B0044 (Dec. 4, 1981).

Rep. No. 95–1403, 95th Cong., 2d Sess. at 21–22 (July 31, 1978)) (emphasis supplied). Denying an award of attorney fees to a claimant who is not an "employee or applicant for employment" seems entirely consistent with Congress' apparent intention to deny such individuals the additional procedural protections of § 7701.

Because we reject the OPM's argument that the distinction between "individual" and "employee or applicant for employment" evidences Congress' intent not to extend § 7701(g)(1) to Chapter 83 appeals, we also disagree with the Federal Circuit that these different "sets" of claimants render the scope of § 7701(g)(1) ambiguous. *Williams, supra,* 718 F.2d at 1556. Rather, we conclude that Congress clearly intended to waive its sovereign immunity only when an "employee or applicant for employment" brings the action, and the fact that the action concerns disability retirement benefits does not abrogate that waiver.

In reaching this conclusion, we do no violence to the rules of statutory construction outlined at the beginning of this section,[43] and we find our result in harmony even with those cases rejecting the *Scroggins* theory of judicial review.[44] In the judicial review cases, the courts were called upon to reconcile clearly *conflicting* provisions; § 7703(c) provides the standard of review for "any agency action," while § 8347(c) provides that OPM decisions relating to disability are "final and conclusive and ... not subject to review." In the instant case, however, Chapter 83 contains no relevant, let alone conflicting, provision regarding attorney fees. Hence, unlike the question of judicial review, the statutory

scheme contains nothing to contradict the plain language of Chapter 77's attorney fees provision.[45] Given this clarity, we respectfully but completely disagree with the Federal Circuit's conclusion that a fee award in Chapter 83 cases is "hopelessly dependent on implication and negative inferences,"[46] and conclude that *denial* of such an award is dependent upon implication and inference. Accordingly, we hold that § 7701(g)(1) authorizes the MSPB to award attorney fees in appeals from the OPM's disability retirement decisions. We now consider whether that authority is limited to agency initiated actions.

## C. Voluntary vs. Involuntary Retirement

As interpreted by the MSPB, § 7701(g)(1) does not authorize an award of attorney fees against the OPM in employee initiated disability retirement appeals. According to the Board, "[a]n award of attorney fees to an individual in a disability retirement proceeding can only be in the interest of justice in cases involving agency initiated disability retirement actions...." *See Scarborough v. Office of Personnel Management,* MSPB No. AT831L8010211 (July 30, 1982), slip op. at 1, quoting *Vergagni v. Office of Personnel Management,* MSPB Docket No. DC831L8010270 (July 19, 1982), 1982 FMSR 7033. Because Scarborough had initiated the disability retirement petition in this case, attorney fees were disallowed under the Board's broad prophylactic rule.

"[T]he starting point in every case involving construction of a statute is the language itself." *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98

---

**43.** *See* p. 808, *supra.*

**44.** *See* note 17 and accompanying text, *supra.*

**45.** Because Chapter 83 is devoid of any provision relating to attorney fees, Chapters 83 and 77 cannot even be characterized as contrasting let alone conflicting. In *Dawson,* 712 F.2d at 268–69, the court opted for such a characterization in describing the MSPB's jurisdiction. The court determined that § 8347(d), which gives the Board jurisdiction over retirement matters, "contrasted," rather than conflicted, with § 7701(a), which is the Board's general

jurisdictional grant. *Id.* If sections 7703(c) and 8347(c) are conflicting, *see McCard, supra,* 702 F.2d at 981 (sections 7703 and 8347(c) appear inconsistent), while sections 7701(a) and 8347(d) are merely "contrasting," *see Dawson, supra,* 712 F.2d at 268–69, then we view section 7701(g)(1) as compatible with, and complementary to, Chapter 83, which has no counterpart to Chapter 77's fee authorization provision.

**46.** *Williams, supra,* 718 F.2d at 1557, *quoting Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1387 (Fed.Cir.1983).

S.Ct. 2370, 2375, 57 L.Ed.2d 239, 247 (1978), quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539, 561 (1975) (Powell, J., concurring); *Schramm, supra,* 682 F.2d at 87 (reversing the Board's interpretation of 5 U.S.C. § 7701(c)). Section 7701(g)(1) authorizes reasonable fee awards to prevailing parties in certain circumstances that are "warranted in the interest of justice." In concluding that the "warranted in the interest of justice" standard is satisfied only in agency initiated cases, the Board has created an exception to the fee provision which is inconsistent with Congress' express language.

Both the MSPB and OPM rely upon the legislative history of CSRA to persuade this court to accept the Board's conclusion that § 7701(g)(1) excludes employee initiated actions. As already indicated, the "warranted in the interest of justice" standard is a compromise between the more restrictive Senate and more liberal House proposals. *See* House Conf.Rep., *supra,* at 142, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2876. To support their interpretation of the standard, the Board and the OPM rely upon the statements of Senator Mathias [47] and the Senate Report.[48] All of these explanations, however, refer to the Senate's more restrictive "bad faith" standard. Reference to statements pertaining to a version of the Act not enacted leaves the meaning of the enacted provision unclear. "In the face of that ambiguity, we decline to rewrite the plain language of the Act, and hold that [§ 7701(g)(1)] must be given its literal meaning." *Schramm, supra,* 682 F.2d at 88 (interpreting § 7701(c)(1)). Because a literal reading of the statute does not support the Board's interpretation, § 7701(g)(1) authorizes the MSPB to award attorney fees in voluntary as well as involuntary retirement cases.

Not only is the Board's position contrary to the express language of the statute, but it is illogical as well. The Board in *Vergagni, supra,* determined that Congress enacted the attorney fees provision to protect employees who had been dragged through costly legal proceedings involuntarily. Hence, the Board found that this policy was "less persuasive" in employee initiated cases, *id.* at 4, and, therefore, limited fee awards to agency initiated disability retirement actions. *Id.* at 5.

This reasoning is faulty for several reasons. First, to say that § 7701(g)(1) is particularly appropriate in agency initiated actions certainly does not mean that the statute is inapplicable to other situations. Indeed, the OPM's inexplicable failure to act can be just as harassing as an unjustifiable agency initiated action.[49]

Secondly, this case clearly exemplifies the unfair results the Board will reach in applying the *Vergagni* rule. In this case, Scarborough's superiors had discussed filing an involuntary retirement action, but had persuaded Scarborough to file a voluntary petition. Thus, the *Vergagni* decision attaches serious collateral disadvantages to Scarborough's ostensibly innocuous decision to file his petition before his superiors initiated an involuntary proceeding. This interpretation would create a trap for the unwary employee who takes his superior's suggestion and voluntarily files for disability retirement, thereby losing his right to a fee award if the OPM arbitrarily denies his

47. Taken from transcript of Senate Committee on Governmental Affairs' Mark-up Session on S. 2640, 95th Cong., 2d Sess. 123 (June 12, 1978).

48. S.Rep. No. 95–969, 95th Cong., 2d Sess. 60–61 (1978).

49. This case is not the only instance in which the OPM has failed to cooperate in an MSPB proceeding. *See, e.g., Stone v. OPM,* MSPB Docket No. SN083109001, Feb. 24, 1981 (failed to respond to interrogatories); *Matthews v. OPM,* MSPB Docket No. AT083109004, Dec. 18, 1980 (failed to make submissions to Board). Other agencies have also "sometimes seem[ed] unprepared to participate as adversaries in the [MSPB's] adjudicatory process." Vaughn, *The Opinions of the Merit Systems Protection Board: A Study in Administrative Adjudication,* 34 Ad.L.Rev. 25, 39 & n. 83 (1982). Such apparent unpreparedness in an employee initiated action could indicate that the "agency's [defensive] action was clearly without merit" for purposes of § 7701(g)(1).

claim.[50] Worse yet, this interpretation would encourage the wary employee who does know about the *Vergagni* decision to remain on the job despite his inability to work, forcing his agency to initiate the retirement action and thereby remaining eligible for attorney fees. This court refuses to uphold a Board interpretation of § 7701(g)(1) that would create such nonsensical results. *See United States v. Turkette, supra,* 452 U.S. at 580, 101 S.Ct. at 2527, 69 L.Ed.2d at 252 (interpretations leading to absurd results are to be avoided). *See also Williams, supra,* 718 F.2d at 1557.

## V. CONCLUSION

■ Although we agree with the OPM that Chapter 83 governs this disability retirement appeal, we agree with the Board that § 7701(g)(1) authorizes fee awards in Chapter 83 appeals. We reject the Board's determination, however, that § 7701(g)(1) does not authorize the MSPB to award fees in employee initiated cases. Because the MSPB based its denial of Scarborough's attorney fees solely upon this erroneous interpretation, we reverse and direct the Board to order that Scarborough recover his attorney fees of $888.09 plus a reasonable fee for his attorney's services on this appeal.[51] The case is remanded solely to determine the reasonableness of the fees incurred for appellate work.

REVERSED and REMANDED.

---

**50.** The duty status regulatory provision applicable to agency initiated disability retirement applications, 5 C.F.R. § 831.1206, is already a disincentive to the agency to initiate a disability retirement.

**51.** It is well settled that "the lawyer must be paid for the effort entailed in securing compensation." *Knighton v. Watkins,* 616 F.2d 795, 800 (5th Cir.1980). Accordingly, when a lower court or administrative agency erroneously denies a fee award under a fee-authorizing statute and that decision is corrected on appeal, the prevailing party's fee award includes services performed in the appellate court. *See Woods-*

*Drake v. Lundy,* 667 F.2d 1198, 1204 n. 12 (5th Cir.1982); *Dillon v. AFBIC Development Corp.,* 597 F.2d 556, 564 (5th Cir.1979); *Morrow v. Dillard,* 580 F.2d 1284, 1300 (5th Cir.1978) (and cases cited therein). *See also* E.R. Larson, *Federal Court Awards of Attorney's Fees* 171-173 (1981) (noting that in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522, the Supreme Court affirmed an award of fees for appellate services establishing plaintiff's right to receive fees without ever questioning the appropriateness of an award for work performed on the fees issue itself).