Albert D. LANCELLOTTI, Petitioner,

v.

OFFICE OF PERSONNEL MANAGE-
MENT, Respondent.

No. 82–3202.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
Nov. 19, 1982.

Decided March 31, 1983.

---

Albert D. Lancellotti, petitioner pro se.

Peter F. Vaira, U.S. Atty., Thomas J. McBride, Asst. U.S. Atty., Philadelphia, Pa., for respondent; Joseph A. Morris, Gen. Counsel, Henry G. Watkins, Asst. Gen. Counsel, Earl A. Sanders, Washington, D.C., of counsel.

Before GIBBONS, HIGGINBOTHAM, and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Petitioner, Albert D. Lancellotti, seeks review of a decision of the Merit Systems Protection Board (MSPB) affirming respondent Office of Personnel Management's (OPM's) order to terminate petitioner's dis-

ability annuity. Respondent argues that this Court lacks jurisdiction to decide the merits of the case. This contention compels us to confront the difficult interplay among several statutes that may grant appellate jurisdiction.

For the reasons that follow, we hold that, while Lancellotti's petition is not reviewable under either 5 U.S.C. § 7703 (Supp. II 1978) or 5 U.S.C. § 8347(c) (Supp. IV 1980), which are provisions of the Administrative Code, it is reviewable under a "catch-all" provision of the Judicial Code, 28 U.S.C. § 2342(6) (Supp. IV 1980). Although this latter provision was repealed by the Federal Court Improvement Act of 1982, P.L. 97–164, 96 Stat. 25, *reprinted in* 50 U.S.L.W. 77 (April 27, 1982), which transfers the bulk of appellate jurisdiction over MSPB cases from the Circuit Courts of Appeals to the Court of Appeals for the Federal Circuit, section 2342(6) was in effect when this petition was filed.[1] We thus will reach the merits, and we will deny the petition for review. While the most difficult question before us is that of reviewability, an understanding of the issues requires us first to set forth the factual background of this action.

### I. *Factual and Procedural Background*

Petitioner retired from his position in the Department of the Navy in 1973, pursuant to provisions of the Civil Service Retirement Law that permit retirement when total medical disability prevents performance of useful and efficient service. 5 U.S.C. §§ 8331, 8337 (1976 & Supp. IV 1980). The statute provides for the termination of disability annuities upon the annuitant's recovery from his disability or upon his restoration to an earning capacity "fairly comparable to the current rate of pay of the position occupied the time of retirement." 5 U.S.C. § 8337(d) (1976).[2] An annuitant is deemed

---

**1.** While this decision, therefore, may have little precedential effect, it will serve to identify certain jurisdictional lacunae created by the Federal Court Improvement Act that apparently were unintended and may merit the attention of Congress. *See infra* note 12.

**2.** 5 U.S.C. § 8337(d) (1976) *(emphasis added)* reads:

(d) If an annuitant receiving disability retirement annuity from the Fund, before becoming 60 years of age, recovers from his disability, payment of the annuity terminates

restored to the relevant earning capacity if his income in each of two consecutive years is at least eighty percent (80%) of the current rate of pay for the previously held position.

For 1978, petitioner reported income from wages or self-employment in the amount of $22,533.00. The rate of pay in 1978 for an individual occupying petitioner's last position (*i.e.,* grade GS–7, step 10) was $16,920.00. Petitioner concedes that his salary in 1978 greatly exceeded 80% of the then-current salary of his former position. For 1979, petitioner reported income from wages and self-employment in the amount of $14,670.00. The salary for a grade GS–7, step 10, employee in 1979 was $18,101.00, 80% of which was $14,480.00. Thus, petitioner's income in both 1978 and 1979 exceeded 80% of the current salary for petitioner's last position. Accordingly, OPM correctly informed petitioner on January 31, 1981, that petitioner's disability annuity was being terminated effective January 1, 1981, as required by the terms of 5 U.S.C. § 8337(d).

Petitioner sought reconsideration of the initial decision pursuant to 5 C.F.R. § 831.109(e)–(f) (1981), arguing that, although he had reported income of $14,670.00 in 1979, $600.00 of that amount was "vacation pay" actually accrued in 1978. He further contended that the current salary for the position he formerly had occupied was not $18,101.00 but, rather, $19,012.50.[3] On March 27, 1981, OPM affirmed its initial determination that petitioner's income from wages in both 1978 and 1979 had exceeded 80% of the current pay of his former position. Addressing petitioner's vacation-pay argu-

ment, OPM held that, because the money actually had been received in 1979, it would be included as part of petitioner's total income for that year. OPM concluded by informing petitioner of his right to pursue an administrative appeal before the MSPB pursuant to 5 U.S.C. § 8347(d) (Supp. IV 1980) and 5 C.F.R. § 831.110 (1981).

By letter dated April 22, 1981, petitioner filed with the MSPB a notice of appeal from OPM's determination. In a subsequent brief, written with the assistance of counsel, petitioner based his appeal on two theories: (1) the assertion that the amount by which petitioner's 1979 income had exceeded 80% of the then-current pay for his former job—$189.20—was so small that it should be ignored as *de minimis;* and (2) the assertion, raised in a different context before OPM, that $600 should be deducted from petitioner's reported income because it was vacation pay accrued in 1978 and not part of petitioner's 1979 wages.

The MSPB's Philadelphia Regional Office (Regional Office) affirmed OPM's decision on August 20, 1981. The Regional Office first rejected petitioner's *de minimis* argument, reasoning that the language of 5 U.S.C. § 8337(d) unequivocally establishes receipt of 80% of current salary as the standard for determining whether earning capacity had been restored and contains no provision requiring that this amount be "substantially" exceeded. The Regional Office also affirmed OPM's determination regarding vacation pay and advised petitioner of his right to further review pursuant to 5 C.F.R. § 1201.114–.115 (1981).

Petitioner, through counsel, filed a petition for review before the MSPB on Sep-

on reemployment by the Government or 1 year after the date of the medical examination showing the recovery, whichever is earlier. If an annuitant receiving disability retirement annuity from the Fund, before becoming 60 years of age, is restored to an earning capacity fairly comparable to the current rate of pay of the position occupied at the time of retirement, payment of the annuity terminates on reemployment by the Government or 1 year after the end of the calendar year in which earning capacity is so restored, whichever is earlier. *Earning capacity is deemed*

*restored if in each of 2 succeeding calendar years the income of the annuitant from wages or self-employment or both equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement.*

**3.** Petitioner asserts that the current rate of pay of his former position should be calculated on the basis of his disability annuity. Contending that his annuity represents 40% of current salary, petitioner multiplies his annuity by a factor of 2.5 to produce the number $19,012.50.

tember 19, 1981, raising the same claims that he had presented to the Regional Office. In addition, petitioner reasserted the allegation (raised before OPM) that OPM should have used $19,012.50 instead of $18,101.00 as the 1979 salary of petitioner's former position. By order and opinion of April 25, 1982, the MSPB denied the petition for review, holding (1) that petitioner had failed to prove by a preponderance of the evidence that he had not been restored to earning capacity; (2) that OPM had not erred in determining petitioner's 1979 wages to have exceeded the 80% maximum; and (3) that petitioner had failed to offer any evidence in support of his claim that a portion of his 1979 income actually was vacation pay accrued in 1978. The Board advised petitioner of a right to judicial review "as specified in 5 U.S.C. § 7703." Petitioner filed this petition *pro se* on May 24, 1982.

## II. *Reviewability*

Turning to the question of reviewability, we note that there are three possible grants of jurisdiction: 5 U.S.C. § 7703 (Supp. II 1978); 5 U.S.C. § 8347 (1976 & Supp. IV 1980); and 28 U.S.C. § 2342(6) (Supp. IV 1980), repealed as of October 1, 1982. We will examine each of these provisions.

### A. *5 U.S.C. § 7703*

 The dispositive order of the MSPB advised petitioner of the "right to seek judicial review of the Board's action as specified in 5 U.S.C. § 7703." We do not believe that section 7703 confers upon this Court jurisdiction to review the Board's ruling.

Prior to its amendment by the Federal Court Improvement Act of 1982, *supra*, section 7703 provided, in pertinent part:

(a)(1) *Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.*

. . . .

(b)(1) Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals as provided in chapters 91 and 158, respectively, of title 28.

. . . . .

(Emphasis added).[4] Petitioner, however, does not fall within the scope of section 7703(a)(1) as he is neither an "employee" nor an "applicant for employment" within the meaning of the statute. At best, petitioner, as a disability annuitant, would appear to be a *former* employee. In addition, the definitional section of the statute would appear to exclude petitioner as an "employee."[5] Moreover, petitioner's claim (i.e., that his disability annuity was wrongfully terminated) does not relate to an adverse employment decision, such as suspension, removal, or reduction in grade, initiated by the agency, as the statute by its terms, requires. The legislative history of the Civil Service Reform Act of 1978, P.L. 95-454,

---

4. Section 7703(b)(1) now provides that an "order or final decision of the Board shall be filed in the *United States Court of Appeals for the Federal Circuit....*" *See* Federal Court Improvement Act, § 144, *supra, reprinted in* 50 U.S.L.W. at 83 (emphasis added).

5. 5 U.S.C. § 2105(a) (1976 & Supp. III 1979) provides, in pertinent part:

For the purpose of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is—

(1) appointed in the civil service by one of the following acting in an official capacity—

(A) the President;

(B) a Member or Members of Congress, or the Congress;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

(E) the head of a Government controlled corporation; or

(F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

92 Stat. 1111, 1143, also suggests that section 7703 was enacted to provide judicial review of adverse actions initiated by agencies against employees engaged in misconduct or performing at an unacceptable level.[6] Petitioner's claims do not fall within the scope of section 7703; we therefore reject the Board's statement of jurisdiction.

### B. *5 U.S.C. § 8347*

■ Because petitioner's claim appears to present a disability-retirement question, we turn to another possible jurisdictional basis: that found in the Civil Service Retirement Act, 5 U.S.C. §§ 8331–8348. Our review of disability-retirement questions, however, is circumscribed by 5 U.S.C. § 8347, which provides:

. . . .

(c) The Office [OPM] shall determine *questions of disability and dependency* arising under this subchapter [5 U.S.C. §§ 8331–8348]. Except to the extent provided under subsection (d) of this section, *the decisions of the Office concerning these matters are final and conclusive and are not subject to review.* The Office may direct at any time such medical or other examinations as it considers necessary to determine the facts concerning disability or dependency of an individual receiving or applying for annuity under this subchapter. The Office may suspend or deny annuity for failure to submit to examination.

(d)(1) *Subject to paragraph (2) of this subsection, an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board.*

(2) In the case of any individual found by the Office to be disabled in whole or in part on the basis of the individual's mental condition, . . . the decision of the Board shall be subject to judicial review under section 7703 of this title. (Emphasis added.)[7]

Interpreting section 8347, this Court recently joined the Eighth Circuit in holding that subsection (c) provides only for "administrative," not "judicial," review of most questions of physical disability and dependency arising under 5 U.S.C. §§ 8331–8348. *Campbell v. Office of Personnel Management, supra* note 7. *Accord Morgan v. Office of Personnel Management,* 675 F.2d 196 (8th Cir.1982).[8] Petitioner in *Campbell* sought to avoid the plain language of section 8347(c) by analogizing his case to a line of cases from the Court of Claims, which read into the statute a "fundamental fairness" due process concept to support jurisdiction.[9] The Court of Claims in those cases asserted jurisdiction over normally unreviewable agency decisions that were procedurally *ultra vires* and based on

**6.** The legislative history of these sections, while extensive, is murky. Although the Senate Report states that § 7703 "applies to judicial review of all final orders and decisions of the Board," it is clear from context that the reviewable decisions are only "adverse actions" instituted against employees or applicants. *See* S.Rep. No. 969, 95th Cong., 2d Sess. 62 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2784. Petitioner is neither an employee nor an applicant.

**7.** Section 8347(d)(2) was enacted in 1980. Prior to that time, no judicial review whatsoever was contemplated by subsections (c) and (d). *See Campbell v. Office of Personnel Mgmt.,* 694 F.2d 305, 307–08 (3d Cir.1982).

**8.** In *Campbell,* this Court was confronted with a petition for review of an OPM denial of federal disability retirement benefits for a litigant diagnosed as suffering from carpal tunnel syndrome. As here, respondent OPM argued that

we were without jurisdiction to review the petition. As *Campbell* made clear, the language of § 8347(c) provides that OPM alone shall determine questions of disability and dependency (subject only to the post-1980 exception for cases involving mental disability). *See Campbell, supra* note 7, 694 F.2d at 307–08.

**9.** This is the so-called *Scroggins* line of cases. *See, e.g., Polos v. United States,* 223 Ct.Cl. 547, 621 F.2d 385, 391–92 (1980); *Fancher v. United States,* 218 Ct.Cl. 504, 588 F.2d 803, 806 (1978); *Scroggins v. United States,* 184 Ct.Cl. 530, 533–34, 397 F.2d 295, 297, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968); *Gaines v. United States,* 158 Ct.Cl. 497, *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962). *Accord Parodi v. Merit Systems Protection Bd.,* 690 F.2d 731, 733–37 (9th Cir. 1982) (adopting the *Scroggins* rationale and

a clear misreading of a statute, or other error of great magnitude, such that due process required judicial intervention. Agreeing with the Eighth Circuit, however, this Court concluded in *Campbell* that Congress expressly had foreclosed judicial review of physical disability determinations, 694 F.2d at 308, and buttressed its holding by relying on the Supreme Court's decision in *United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982).[10] *Campbell* thus recognized Congress' ability explicitly to foreclose judicial review of administrative proceedings.

Although we are, of course, bound by the panel's ruling in *Campbell,* the compass of that opinion is narrow. Factual determinations of physical disability clearly are not judicially reviewable under section 8347(c), but we are not asked here to make a determination of physical disability or dependency. Rather, we are presented only with a challenge to "an administrative action or order affecting the rights or interests of an individual" within the meaning of section 8347(d)(1), for petitioner requests, in effect, a *legal* ruling as to whether the statute and regulations contain a *de minimis* exception to the 80% requirement of section 8337(d) and whether petitioner's 1978 vacation pay appropriately was included in his 1979 salary. Such determinations are not disability or dependency evaluations within the meaning of section 8347(c); they therefore must fall within section 8347(d)(1).[11]

Section 8347(d)(1) thus authorizes the MSPB to review OPM determinations. That section does not, however, provide for *judicial* review of MSPB orders. While we recognize that the statute neither forecloses judicial review (as does section 8347(c)) nor

limits it to claims of either employees or applicants (as does section 7703), we believe that appellate jurisdiction must rest upon an *affirmative* grant. Review, then, if it is available, must be based on a different jurisdictional provision.

#### C. *28 U.S.C. § 2342(6)*

■ We now turn to 28 U.S.C. § 2342(6), which provided (at the time this appeal was filed):

> The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
>
> . . . .
>
> (6) all final orders of the Merit Systems Protection Board except as provided for in section 7703(b) of title 5.

This broad grant of jurisdiction appears to apply to the case before us. The legislative history of the Civil Service Reform Act of 1978, which comprehends 5 U.S.C. § 7703 and 28 U.S.C. § 2342, indicates that those sections were intended to be co-extensive grants of jurisdiction over *all* MSPB orders. *See* S.Rep. No. 969, 95th Cong., 2d Sess. 62 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 2784 ("The section [i.e., section 7702(a), now 7703(a)] applies to judicial review of *all* final orders or decisions of the Board. . . .") (emphasis added); *id.* at 64, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2786 (amendment adds final orders of MSPB to list of matters over which Courts of Appeals have jurisdiction).

While 28 U.S.C. § 2342(6), by its terms, does not cover appeals available pursuant to 5 U.S.C. § 7703(b), which section may be invoked only by employees (or applicants

---

finding judicial review available when there is a fundamental defect in the administrative proceedings).

**10.** *United States v. Erika, Inc.,* involved 42 U.S.C. § 1395ff, a statute different from the one here at issue. *Erika* reversed the en-banc Court of Claims, which had asserted jurisdiction over private insurance carriers' determinations of Part B Medicare Claims. The Court of Claims had relied heavily on the *Scroggins* line of cases in taking jurisdiction; *Erika* thus casts considerable doubt on the continuing validity of *Scroggins* and its progeny.

**11.** We concede that the language of § 8347(c) might conceivably be read as applying the nonreviewability principle to "legal" as well as "factual" determinations of a disability annuity. Such a reading, however, would be strained, and we eschew it. Moreover, in view of the ambiguity of the section, a contrary reading might offend the tenets set forth in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *see infra* Part IIC.

for employment) and must involve adverse employment actions, *see* discussion in Part IIA, *supra,* it seems reasonable to read section 2342(6) as a "catch-all" provision encompassing all appeals brought by *non* -employees. Such a reading would include disability retirement annuitants or claims of the sort brought here by petitioner. Failure so to read section 2342(6) would create in the jurisdictional authorization a void that Congress does not appear to have intended.

This conclusion is buttressed by the Supreme Court's declaration in *Abbott Laboratories v. Gardner, supra* note 11, 387 U.S. at 140, 87 S.Ct. at 1510, that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." In contrast to the clear intent of Congress to preclude judicial review of administrative determinations of physical disability and dependency questions, *see Campbell v. Office of Personnel Management, supra* note 7, 694 F.2d at 307–08; *Morgan v. Office of Personnel*

*Management, supra,* 675 F.2d at 199–200, there is no evidence of such clear intent with respect to that class of final orders that are neither adverse employee or applicant actions (5 U.S.C. § 7703) nor physical disability or dependency decisions (5 U.S.C. § 8347(c)). Under *Abbott Laboratories,* review is favored.

■ For the foregoing reasons, we hold that we have jurisdiction to consider Lancellotti's petition. We reach this conclusion notwithstanding the repeal of section 2342(6). Lancellotti filed his petition for review on May 24, 1982, well before the Federal Court Improvement Act (FCIA) became effective on October 1, 1982. Thus, there was jurisdiction in this Court at the time Lancellotti filed the petition, and we currently retain such jurisdiction in all cases filed with us before the effective date of the FCIA.[12]

### III. *The Merits*

Turning to the merits: petitioner alleges, *inter alia,* (1) that OPM and the Board committed certain errors in calculating both

12. Section 403 of the FCIA, *reprinted in* 50 U.S.L.W. 77, 87 (April 27, 1982), does not discuss the effect of the FCIA on petitions for review of MSPB decisions where the petitions were filed before the effective date of the FCIA. However, the FCIA expressly does declare that "[a]ny case in which a notice of appeal has been filed in a *district court* of the United States prior to the effective date of this Act shall be decided by the court of appeals to which the appeal was taken." FCIA, § 403(e) (emphasis added). Moreover, the FCIA does not provide for the transfer of appeals such as this one to the Court of Appeals for the Federal Circuit even though the Act explicitly does order the transfer of cases pending before the Court of Claims, § 403(a), and the Court of Customs and Patent Appeals, § 403(b). *Cf. Campbell v. Office of Personnel Mgmt, supra* note 7, 694 F.2d at 309 n. 6 (discussing FCIA's general transfer provision, § 301). The analogy derived from § 403(e), and the negative implication arising from §§ 403(a) and (b), lead us to conclude that a petition such as this one cannot be transferred to the Court of Appeals for the Federal Circuit, *cf. infra* (questioning whether Court of Appeals for the Federal Circuit would have jurisdiction over such a case); these sections also provide support for our retention of jurisdiction.

We do not have jurisdiction over any petitions of this sort filed *after* the effective date of

the FCIA, and our reading of that Act leads us to believe that the Court of Appeals for the Federal Circuit might not have such jurisdiction, either. The Act amends Chapter 83 of 28 U.S.C. by adding § 1295(a)(9), *reprinted in* 50 U.S.L.W. at 81, which vests in the new Federal Circuit jurisdiction over final orders and decisions of the MSPB pursuant to 5 U.S.C. §§ 7703(b)(1) and 7703(d). Under our interpretation, these sections do not cover orders such as the one here at issue. Section 2342(6) having been repealed, Congress has created a lacuna in jurisdiction. Nothing in the legislative history suggests that the void is intentional; nor does Congress appear to expect the courts to assert jurisdiction via a *Scroggins* -like approach. It may have escaped Congress' attention that 5 U.S.C. § 7703 and 28 U.S.C. § 2342(6) (now repealed) address different jurisdictional issues. The Senate Report, addressing 28 U.S.C. § 1295(9), states:

Subsection (a)(9) of section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of any appeal from a final order or final decision of the Merit Systems Protection Board. Currently, jurisdiction of these appeals is in the Court of Claims or a United States court of appeals, pursuant to sections 7703(b)(1) and 7703(d) of title 5, United States Code.

*See* S.Rep. No. 97–275, 97th Cong. (1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News 11,

petitioner's earnings for 1979 and the "current salary" against which his earnings were measured; (2) that the inclusion of 1978 "vacation pay" in petitioner's 1979 earnings was erroneous; and (3) that a *de minimis* rule should be applied to the 80% maximum of current salary imposed by 5 U.S.C. § 8337(d). We find no error in the agencies' determinations, and we therefore will deny the petition on the merits.

■ Petitioner first asserts that OPM initially used salary figures for a lower "step" in grade GS–7 in computing the "current salary" for petitioner's former job: instead of working with $18,101.00 as the "current salary" earned by a GS–7, step 10, employee in 1979, petitioner claims, OPM should have computed the applicable figure on the basis of petitioner's annuity. Petitioner's theory, however, is supported by neither fact nor statute. The applicable pay rates for 1979 were set by the President, pursuant to 5 U.S.C. §§ 5305 and 5332 (1976 & Supp. V 1981); the rates became effective on October 1, 1979, and were promulgated in Executive Order 12165, 44 F.R. 58671 (Oct. 9, 1979), *reprinted in* 3 C.F.R. 445 (1980). The salary for a GS–7, step 10, employee was $18,101.00. 5 U.S.C. § 8337(d) makes no reference to any alternative method of computing "current rate of pay"; nor does it suggest that calculation of salary should refer to an annuity, which itself is based on "average pay", *see* 5 U.S.C. § 8339(g)(1) (Supp. V 1981).[13] We agree with respondent that the "current rate of pay" figure must derive from the applicable Government pay scale, promulgated pursuant to 5 U.S.C. §§ 5305 and 5332, and not from an annuity.

■ Petitioner also argues, in the alternative, that his annuity was miscalculated on the basis of "average" pay rather than "current salary." It is clear that increases in Civil Service annuities have been linked to flat, non-discretionary percentage increases in the Consumer Price Index, *see* 5 U.S.C. §§ 8340, 8331(15) (1976 & Supp. V 1981); this formula protects the annuitant from inflationary spirals and the vagaries of politics. The salary of Government employees, on the other hand, always is subject to political forces. 5 U.S.C. § 5305 grants to the President discretion to determine, with the concurrence of Congress, federal salary increases. Petitioner's argument therefore is incorrect.

■ Petitioner next asserts that "vacation pay" should not be deemed "wages" for purposes of the 80% maximum imposed by section 8337(d) and that, even if "vacation pay" is so construed, certain amounts should not be deemed as accrued in 1979. Petitioner reads section 8337(d) too narrowly. We agree with respondent that "vacation pay" constitutes income earned by the employee in the course of his duties. That amount is taxable and properly included as income for purposes of calculating section 8337(d)'s 80% maximum amount. In addition, we agree with the Board that there is no indication in the record that the disputed vacation pay actually was received in 1978 instead of 1979.

Petitioner finally contends that the amount by which his income exceeded the 80% maximum imposed by 5 U.S.C. § 8337(d) was so small as to warrant a *de minimis* exception to the statutory prescription. Nothing in the legislative history supports such a concept. The clear language of the statute requires that the income be "*at least* 80 percent of the current rate of pay." Had petitioner's income been 79.999% of the current rate of pay, Lancellotti would have escaped the bar of section

---

31. Our reading suggests that this interpretation of the statutory language is incorrect, or at least unclear. However, the Senate Report may suggest a belief that the Court of Appeals for the Federal Circuit has jurisdiction over all appeals from a final order or decision of the MSPB. Congress may wish to attend to this matter for the sake of future petitioners with similar contentions. A copy of this opinion will be sent to the appropriate committees of both

Houses of Congress and the General Counsel of the MSPB for their consideration.

13. Petitioner argues, in essence, that the "current rate of pay" in 5 U.S.C. § 8337(d) should be based on the "average pay" used to form the basis of annuity payments. "Average pay" refers to the highest three consecutive years of an annuitant's salary, divided by three. This figure creates the basis for the annuity, not for computing "current salary."

**100**

8337(d). Because the legislative history is clear and the statutory language unambiguous, further discussion of this claim is unwarranted. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976); *Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975). We therefore reject petitioner's *de minimis* theory.

For the reasons expressed herein, we conclude that we have jurisdiction to decide the cause. Finding no error in the Board's determinations, we will deny the petition on the merits.