740 F.2d 1552
 Willard A. BRONGER, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
Frank E. KACPROWICZ, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
Albert J. VEVERKA, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 Appeal Nos. 83-1349, 83-1350 and 83-1376.
 United States Court of Appeals,
Federal Circuit.
 July 26, 1984.
 
 Carl H. DeBroux, North Aurora, Ill., for petitioners.
 Helene M. Goldberg, Washington, D.C., for respondent; Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Mary Mitchelson and Thomas W. Petersen, Washington, D.C., on the brief.
 Before DAVIS, SMITH and NIES, Circuit Judges.
 EDWARD S. SMITH, Circuit Judge.
 
 
 1
 In this consolidated appeal from the Merit Systems Protection Board (board) petitioners, air traffic controllers each with civilian/military experience in their jobs exceeding 25 years, request reversal of board decisions sustaining, in each case, denial by the Office of Personnel Management (OPM) of each of their requests for an immediate retirement annuity. We first address and reject OPM's contention that this court lacks jurisdiction over this appeal, and then reverse the board's decisions for the reason stated below.
 
 Background
 
 2
 Each of these three petitioners has worked more than 25 years as an air traffic controller. In each case, however, less than 25 of these years (approximately 23) were in a civilian capacity as an employee of the Department of Transportation's Federal Aviation Administration (FAA). Approximately 3 additional years (at the beginning of each petitioner's career) were in a military capacity, as controllers licensed by the FAA's predecessor agency, and employed by the Department of Defense.
 
 
 3
 The Professional Air Traffic Controllers Organization called an illegal[1] nationwide strike on August 3, 1981. The FAA proposed removal of nearly all of those controllers, including petitioners, absent from their jobs between August 3 and 5, 1981, on the basis of absence without leave and strike participation. Shortly after this time the FAA called in petitioners to discuss whether they were eligible for immediate retirement in lieu of removal. The FAA and OPM advised petitioners, all of whom were under age 50, that they were not eligible for immediate retirement annuities because they each lacked 25 years of creditable service as required by 5 U.S.C. Sec. 8336(e) (1982).[2] The FAA/OPM position was that petitioners' time as military air traffic controllers did not count as service creditable toward civil service retirement. Accordingly, petitioners exercised another option; they requested and received from OPM 1-time lump-sum distributions of their retirement contributions, totaling about $30,000 in each case. Receipt of this cash would normally result, under section 8342(a), in petitioners forfeiting any right to a retirement annuity.
 
 
 4
 After being removed and receiving their retirement refunds, petitioners realized that other air controllers whose service included over 25 years' time as civilian controllers, had successfully opted for immediate retirement. Petitioners decided to file for such retirement, despite their cash refund requests. OPM denied their requests, both initially and upon reconsideration, on the grounds that their receipt of the lump-sum refunds terminated their rights in the civil service retirement system pursuant to section 8342(a). OPM also took the position that, in any event, petitioners would not have been eligible for immediate retirement annuities because they were involuntarily separated from the FAA "for cause"--i.e., absence without leave and strike participation--and hence ineligible under section 8336(e) for immediate retirement.
 
 
 5
 Petitioners appealed the OPM denials to the board, which, by separate opinions dated May 31, 1983, affirmed on the grounds that petitioners were ineligible because they were removed "for cause" under section 8336(e). On appeal to this court, OPM has abandoned the rationale for which the board affirmed and instead presses only the argument, aside from the initial issue of our jurisdiction, that petitioners' military time does not count in determining their creditable service for immediate retirement.[3] We therefore address only these two issues.
 
 Opinion
 1. This Court's Jurisdiction
 
 6
 In Lindahl v. OPM,[4] this court decided in the negative a very specific jurisdictional issue:[5]
 
 
 7
 We decide here only the question of our jurisdiction to hear the type of appeal before us, i.e., an appeal from an MSPB decision affirming the denial of a claim for annuity following a voluntary physical disability retirement, a decision reached by MSPB under the authority provided it in Sec. 8347(d)(1). In such cases, the initial decision is that of the employee who has elected to retire, and who has asserted disability as the reason, and who has then sought an annuity. [Emphasis supplied.]
 
 
 8
 In the case before us, while petitioners have elected to retire and are seeking an annuity, they have not asserted as their reason a physical disability. This case therefore differs from, and is not controlled by, Lindahl. In particular, we note that the statutory lynchpin of Lindahl, the section 8347(c) "finality clause" which we held to bar judicial review in that case, applies only to "questions of disability and dependency arising under this subchapter [civil service retirement]."[6]
 
 
 9
 Recognizing that the Lindahl rationale does not expressly govern jurisdiction here, OPM advances an alternative argument which the court in Lindahl found unnecessary to address.[7] OPM contends that this court may not review petitioners' appeals because none of petitioners is an "employee or applicant for employment" as required by section 7703(a), providing for judicial review of board decisions. OPM points out that section 7701(a), providing for appeals to the board, is likewise limited to an "employee, or applicant for employment." By contrast, OPM argues that section 8347(d)(1), providing for civil service retirement appeals to the board, covers "individual[s]," a class of people broader than "employee[s]." Petitioners fall outside the "employee" class, according to OPM, since they were former employees when they applied for retirement. Moreover, OPM cites the lack of mention in the legislative history of the Civil Service Reform Act (CSRA)[8] of judicial review of civil service retirement cases. Instead, the CSRA focuses on judicial review of adverse, disciplinary actions taken by an agency against an employee.
 
 
 10
 OPM's position borders on the frivolous when analyzed from either of two perspectives. First, beginning from the "bottom up," as we did in Lindahl, we set out the precise language of section 8347(d)(1):
 
 
 11
 (d)(1) Subject to paragraph (2) [concerning mental disability] of this subsection, an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter [concerning civil service retirement] may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board.
 
 
 12
 This provision makes it clear that an individual such as any of petitioners whose rights or interests have been affected by an OPM action or order concerning retirement, may appeal at least to the board. Subsection (d) of section 8347 also includes (d)(2) concerning mental disability, which provision explicitly authorizes an "individual" to appeal to the board under section 7701 and to the court under section 7703. The fact that Congress took extra pains to clarify the avenue of review in the sensitive area of mental disability when it added subsection (d)(2) only bolsters the conclusion that Congress intended such review as well for the subsection (d)(1) nonphysical-disability retirement cases (i.e., those not precluded from review by section 8347(c)). We as much stated in Lindahl:[9]
 
 
 13
 In Sec. 8347(d)(2) Congress not only allowed but legitimized judicial review in the type of case in which our predecessor court had said it was appropriate, while simultaneously reenacting the express review preclusion in Sec. 8347(c) and making plain that Secs. 8347(d)(1) and (d)(2) were exceptions to that preclusion. [Emphasis supplied.]
 
 
 14
 If any doubt remained whether a nonphysical-disability retirement claim appealable to the board under section 8347(d)(1) were in turn appealable to this court, that doubt should be resolved in favor of the presumption of judicial review over agency action.[10] The express preclusion to judicial review set forth in section 8347(c) applies only, as we have discussed above, to "questions of disability and dependency."
 
 
 15
 Since our "bottom up" analysis leads us to conclude, with the help of Lindahl, that jurisdiction attaches here, we engage in a "top down" analysis to see if the same conclusion holds. Congress has granted this court "exclusive jurisdiction" over "an appeal from a final order or final decision" of the board pursuant to section 7703(b)(1).[11] Section 7703(b)(1) provides that "a petition to review a final order or final decision of the Board shall be filed" in this court. Section 7703(a)(1) states who may file such a petition: "[a]ny employee or applicant for employment adversely affected or aggrieved by a final order or decision" of the board.[12] We now address OPM's argument that petitioners are not "employee[s] or applicant[s] for employment" eligible to appeal here.
 
 
 16
 As OPM admits, "employee" as used in section 7703 is not defined there or in chapter 77 of title 5. The subchapter on civil service retirement includes a definition for purposes of that subchapter at section 8331(1)(A), which refers to the general "employee" definition at section 2105. The relevant part of that definition, section 2105(a)(1)(D), covers "an individual who is--(1) appointed in the civil service by * * * (D) an individual who is an employee under this section." The records before us show that the FAA removed petitioners in September 1981, and that in each case petitioners applied for their lump-sum retirement distributions shortly thereafter,[13] in accordance with the then-applicable provisions of section 8342(a). It would be illogical to conclude that, because petitioners had been effectively removed in September 1981, they immediately entered a "nonemployee" twilight zone. If this interpretation were to prevail, then no employee who was separated from the service would be eligible to apply for lump-sum benefits under section 8342(a), since that provision specifically refers to an "employee".[14] Even more absurdly OPM's position would deprive this court of jurisdiction under section 7703 of the many civil service removal petitions brought by terminated federal employees, which we review every day.
 
 
 17
 In short, OPM's restrictive "employee" argument would likely strip this court of jurisdiction over most board decisions in the civil service retirement area. Not only is this position contrary to our suggestion in Lindahl, as discussed in our "bottom up" analysis supra, but it is contrary to OPM's legislative history argument when applied to the facts of this case. OPM contends that the CSRA legislative history is devoid of reference to retirement appeals, while replete with reference to taking disciplinary or adverse actions against federal employees. If so, the records before us clearly demonstrate an adverse or disciplinary action against each of petitioners: both OPM and the board relied at least in part on petitioners having been involuntarily removed "for cause"--i.e., disciplined for absence without leave and strike participation--as a basis for denying them immediate retirement under section 8336(e). Thus the adverse action is, by the terms of section 8336(e), inextricably bound up with each of the retirement claims before us.[15] We hold that this court possesses jurisdiction to review petitioners' appeal from the board decisions affirming OPM's denial of their applications for immediate retirement annuities.
 
 2. The Military Service
 
 18
 Petitioners contend that the FAA and OPM wrongly advised them that their military time as air traffic controllers did not count toward the 25 years of air controller service required under section 8336(e) for immediate retirement. In support of their argument that the military time does count, petitioners cite the definition of "air traffic controller" in section 2109(1):
 
 
 19
 For the purpose of this title [title 5]--
 
 
 20
 (1) "air traffic controller" or "controller" means an employee of the Department of Transportation or the Department of Defense * * *[.]
 
 
 21
 OPM counters that this definition, which on its face supports petitioners' position, does not mean what it says. OPM cites the legislative history of this provision, wherein Congress repeatedly stated its intent that the controllers in the Department of Defense which it meant that section 2109(1) would cover were civilian controllers only--a very small subgroup.[16] Since petitioners' early service was, in each case, as a military controller, this would seem to exclude petitioners' military time. OPM also cross-references the definition of "employee" set forth in section 2105(a)(1) as one who is "appointed in the civil service." (Emphasis supplied.)
 
 
 22
 While OPM's contentions are well taken, they are not dispositive. In addition to examining closely the definition of "air traffic controller," as we have just done, it is equally if not more important that we focus on the meaning of "service." The issue of what counts as creditable service is, after all, what is disputed here. We know that petitioners were civilian "air traffic controllers" eligible for some type of civil service retirement benefits when they so applied in 1981.
 
 
 23
 At the beginning of the subchapter dealing with civil service retirement, section 8331(12) defines "service" as "employment creditable under section 8332 of this title." That section, entitled "Creditable service," states in pertinent part:
 
 
 24
 (c)(1) * * *
 
 
 25
 (A) the service of an individual who first becomes an employee * * * before October 1, 1982, shall include credit for each period of military service performed before the date of the separation on which the entitlement to an annuity under this subchapter is based * * *[.]
 
 
 26
 If the employee is awarded retirement pay based on his military service, however, section 8332(c)(2) provides that this military service may not be, in effect, counted twice by applying to civil service retirement as well. This does not apply to petitioners, who have not applied separately for military retirement pay based on their few years of military service. We note also that section 8331(13) defines "military service" as "honorable active service," about which there is no dispute as regards petitioners.
 
 
 27
 Taking these statutory provisions together, we have, on the one hand, a definition of "air traffic controller" which appears to exclude military controllers, and, on the other hand, a definition of "creditable service" which includes military service in computation of civil service retirement benefits. The latter definition applies to the service of an "employee" which, in each of petitioners' cases, is specifically modified by the definition for "air traffic controller."
 
 
 28
 Though seemingly circular, the relationships of these provisions do not, in our view, conflict. Rather, they harmonize. One first asks, who, under section 8336(e), is eligible for immediate retirement? Answer: an "employee," specifically modified here to encompass only an "air traffic controller," as provided in sections 8331(1)(A), 2105(a), and 2109(1). Second, one asks, how, under section 8336(e), is the "service" of an air traffic controller to be computed? Answer: by reference to the definitions of "service" in sections 8331(12) and 8332(c), which credit military service. This statutory analysis compels us to hold, on the facts of each of petitioners' cases, that their military service as controllers counts in computing their total creditable service, such that each petitioner's creditable service exceeds 25 years. Accordingly, each petitioner, having been wrongly advised by the FAA and OPM initially, is eligible, as OPM has conceded, to apply for immediate retirement benefits.[17] The decision of the board is reversed. We do not need to reach petitioners' secondary argument of disparate treatment.
 
 
 29
 REVERSED.
 
 
 30
 NIES, Circuit Judge, dissenting.
 
 
 31
 This is the first opinion of this court to declare that this court has jurisdiction over decisions of the MSPB under 5 U.S.C. Sec. 8347(d)(1). I dissent. I also urge that the government request review of this decision by the Supreme Court in conjunction with Lindahl v. Office of Personnel Management, 718 F.2d 391 (Fed.Cir.1983), the Supreme Court having granted a petition for certiorari in the latter case on June 18, 1984.
 
 
 32
 The jurisdiction of this court over appeals of MSPB decisions is found in 28 U.S.C. Sec. 1295(a)(9):
 
 
 33
 (a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction--
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 (9) of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5.
 
 
 37
 In Lindahl, in which both members of the majority of this panel dissented, this court held in banc that claims under Sec. 8347(d)(1) did not fall within Sec. 7703. Specifically, the court held:
 
 
 38
 To hold that judicial review of all Sec. 8347(d)(1) decisions had all along been available under Sec. 7703, would be to render superfluous Congress' action in Sec. 8347(d)(2), making judicial review available for particular claims under Sec. 7703.
 
 
 39
 718 F.2d at 399.
 
 
 40
 This holding is essential to the case, not merely the court's interpretation of Sec. 8347(c) that all judicial review is precluded with respect to the fact of the claimant's disability. It was, however, Sec. 8347(c) which, in Lindahl, gave clear meaning to the review provisions of Sec. 8347(d). The conclusion stated in the Lindahl majority opinion is as follows:
 
 
 41
 This court's grant of jurisdiction to review MSPB decisions is broad but not unlimited. Among the limitations on that grant is necessarily a statute expressly excluding review of certain decisions. Such a statute is spelled out in 5 U.S.C. Sec. 8347(c) and (d). The government's motion to dismiss must therefore be granted.
 
 
 42
 718 F.2d at 395.
 
 
 43
 However, the discussion of Sec. 8347(c) in Lindahl has created a straw on which the majority here clings to distinguish the subject appeals.
 
 
 44
 To return to the statute, 5 U.S.C. Sec. 8347(b) provides:
 
 
 45
 (b) ... The Office [OPM] shall adjudicate all claims under this subchapter [5 USCS Secs. 8331 et seq. re retirement].
 
 
 46
 With respect to review of such OPM decisions, 5 U.S.C. Sec. 8347(d) provides:
 
 
 47
 (d)(1) Subject to paragraph (2) of this subsection, an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board.
 
 
 48
 (2) In the case of any individual found by the Office to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application by an agency for purposes of disability retirement under section 8337(a) of this title, the procedures under section 7701 of this title shall apply and the decision of the Board shall be subject to judicial review under section 7703 of this title.
 
 
 49
 The subject claims are ordinary voluntary retirement claims decided by OPM under 5 U.S.C. Sec. 8347(b). Such claims are appealable to the board under 5 U.S.C. Sec. 8347(d)(1). No statute specifically grants review of Sec. 8347(d)(1) claims and the majority points to none.[1] The majority is correct in stating that the court in Lindahl decided only "a very specific jurisdictional issue" concerning a voluntary disability retirement claim. That type of claim happened to be before the court. However, the rationale of the decision with respect to the construction of Sec. 8347(d)(1) and (2) was not so limited.
 
 
 50
 In any event, by their nature, voluntary retirement claims are not appropriately reviewed under Sec. 7703, which spells out a standard of review tailored to cases where the government is the initiator of action and bears the burden of proof, i.e., adverse action cases. That Congress chose to put involuntary mental disability cases into the category of adverse actions is rational, in view of the nature of the claim. The government is seeking to force the "claimant" out of service because of an alleged mental condition; the "claimant" is seeking to avoid forced retirement on such grounds. The parallel with an adverse action is clear.[2]
 
 
 51
 This court is not the first to have considered the jurisdictional grant of Sec. 7703(b)(1). In Lancellotti v. Office of Personnel Management, 704 F.2d 91 (3rd Cir.1983), the Third Circuit came to the conclusion that the section provided no jurisdiction to review Sec. 8347(d)(1) claims. In the opinion of that court:
 
 
 52
 The legislative history of the Civil Service Reform Act of 1978, P.L. 95-4154, 92 Stat. 1111, 1143, also suggests that section 7703 was enacted to provide judicial review of adverse actions initiated by agencies against employees engaged in misconduct or performing at an unacceptable level. Petitioner's claims do not fall within the scope of section 7703; we therefore reject the Board's statement of jurisdiction. [Footnote omitted.]
 
 
 53
 704 F.2d at 95-96.
 
 
 54
 Thus, the majority has created a conflict between the circuits.[3]
 
 
 55
 The majority's focus on the discussion of Sec. 8347(c) in Lindahl is misplaced. Sec. 8347(c), which says that OPM decisions on "questions" of disability and dependency are not subject to review, is jurisdictional in the sense that it places a limitation on the scope of the consent of the sovereign to suit. Cf. Army & Air Force Exchange Service v. Sheehan, 456 U.S. 728, 734-36, 102 S.Ct. 2118, 2122-23, 72 L.Ed.2d 520 (1982); United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Even where jurisdiction over the claim is granted to a court,[4] the court may not review the OPM finding on the fact of disability or dependency. Lancellotti, 704 F.2d at 96-97; Lindahl, 718 F.2d at 393-94, 397.
 
 
 56
 A holding that there is no direct appeal to this court does not foreclose the possibility of a claim against the government which might be brought in the U.S. Claims Court under 28 U.S.C. Sec. 1491(a)(1) or in a U.S. District Court under 28 U.S.C. Sec. 1346(a)(2). See United States v. Mitchell, --- U.S. ----, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Whether or not Sec. 8347(d)(2) creates an implied preclusion of suit against the government on claims under Sec. 8347(d)(1) can wait for an appropriate case. See Erika v. United States, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982); Lindahl, 718 F.2d at 403-405 (Nichols, J., concurring). The Lindahl majority decision expressly left this issue open. 718 F.2d at 395 n. 1. What Lindahl held is that Sec. 8347(d)(2) specifies the only type of Sec. 8347 MSPB decision which may be taken by direct appeal to this court--namely, decisions on involuntary mental disability. To hold that appeals may also be taken from Sec. 8347(d)(1) decisions would make Sec. 8347(d)(2), which spells out this procedure, superfluous.
 
 
 57
 I appreciate that if jurisdiction is found to be in the Claims Court and district courts under the Tucker Act, this court would have jurisdiction over the appeal under 28 U.S.C. Sec. 1295(a)(2) and (3). See, Heisig v. United States, 719 F.2d 1153 (Fed.Cir.1983). However, in those trial courts, petitioners would bear the burden of proof of their claims. Piccone v. United States, 407 F.2d 866 (Ct.Cl.1969). Thus, substantive matters are involved in our decision in this case, not merely the correct procedural route of review.
 
 
 58
 The majority errs in essentially treating this court as having the same jurisdiction as the U.S. Court of Claims to which Tucker Act claims (28 U.S.C. Sec. 1491) were brought from MSPB decisions. Prior to the 1982 amendment[5], 5 U.S.C. Sec. 7703(b)(1) (Supp. III 1979) provided:
 
 
 59
 Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the Court of Claims ... as provided in chapters 91 ... of title 28.
 
 
 60
 Whether the Court of Claims reviewed the MSPB decision directly, i.e., on cross-motions for summary judgment, or after proceedings in its trial division, was immaterial. All cases were Chapter 91 Tucker Act cases. That type of jurisdiction has not been granted to this court. Heisig v. United States, 719 F.2d at 1158. As Judge Smith succinctly stated in Heisig, "The Federal Circuit is not a renamed Court of Claims." Id. at 1157.
 
 
 61
 I would, accordingly, dismiss this appeal for lack of jurisdiction and would entertain a motion to transfer the case to the U.S. Claims Court, which should be the forum to determine whether it has jurisdiction over the claim in the first instance.[6]
 
 
 
 [1]
 Section 7311(3) of 5 U.S.C. (1982) prohibits participation in a strike against the Government. See Schapansky v. Department of Transp., 735 F.2d 477 (Fed.Cir.1984), and companion air controller cases decided by this court on the same day
 
 
 [2]
 All section references are to title 5, U.S.C., except where otherwise indicated. Section 8336(e) states:
 "(e) An employee who is voluntarily or involuntarily separated from the service, except by removal for cause on charges of misconduct or delinquency, after completing 25 years of service as an air traffic controller or after becoming 50 years of age and completing 20 years of service as an air traffic controller, is entitled to an annuity."
 
 
 [3]
 OPM has conceded that, if this court takes jurisdiction and finds that the military time constitutes creditable service, then petitioners are entitled to apply to OPM for immediate retirement. Such an application, to be successful, would require petitioners to refund their lump-sum distributions. The issue concerning military time was raised before the board, but the presiding official based her decision on the Sec. 8336(e) "for cause" exception
 
 
 [4]
 Lindahl v. OPM, 718 F.2d 391 (Fed.Cir.1983), cert. granted, --- U.S. ----, 104 S.Ct. 3533, 81 L.Ed.2d --- (U.S.1984)
 
 
 [5]
 Id. at 393
 
 
 [6]
 Section 8347(c). See also Lindahl, 718 F.2d at 392-95, beginning with heading, "Judicial Review is Precluded by 5 U.S.C. Sec. 8347(c)," for detailed discussion of the "finality clause." We note also that the finality words of Sec. 8347(c)--"final and conclusive and * * * not subject to review"--concern only "these matters," the antecedent for which is "questions of disability and dependency."
 
 
 [7]
 Lindahl, 718 F.2d at 392
 
 
 [8]
 Pub.L. No. 95-454, 91 Stat. 1111. See 1978 U.S.CODE CONG. & AD.NEWS 2723 et seq. for legislative history
 
 
 [9]
 Lindahl, 718 F.2d at 399. See also id. at 399-400 discussing the subsection (d)(2) "1980 Amendment," and note 6 supra concerning the finality clause
 
 
 [10]
 See Lindahl, 718 F.2d at 396-97 and Supreme Court cases cited therein. See also Lindahl at 399 wherein we again noted the narrowness of our holding: "We need not, and hence do not, decide in this case whether all decisions of MSPB under Sec. 8347(d)(1) are denied judicial review by Sec. 8347(c)." (Emphasis supplied.)
 
 
 [11]
 28 U.S.C. Sec. 1295(a)(9) (1982)
 
 
 [12]
 Section 7701(a), providing for appeals to the board, also refers to "[a]n employee, or applicant for employment." However, as our "bottom up" analysis makes clear, a person appealing a nonphysical-disability, non-mental-disability retirement claim to the board does so under Sec. 8347(d)(1)
 
 
 [13]
 The records show the effective dates of Bronger's, Kacprowicz's, and Veverka's removals to have been, respectively, September 15, 2, and 9, 1981, while the dates on which they filed for lump-sum distributions were September 22, October 5, and October 13, 1981
 
 
 [14]
 Indeed Sec. 8342(a)(1)(A) as currently in force requires that an employee be "separated from the service for at least thirty-one consecutive days" before becoming entitled to be paid the lump-sum credit. Pub.L. No. 97-253, 96 Stat. 794, Sept. 8, 1982. Section 8342(a) as in effect when petitioners applied for the lump-sum refunds similarly referred to an "employee * * * who is separated from the service." In Ellis v. United States, 610 F.2d 760, 761 (Ct.Cl.1979), our predecessor court rejected a somewhat similar "cart before the horse" argument by the Government in determining whether Ellis was a statutory "firefighter" for purposes of retirement benefits. See also Baker v. United States, 614 F.2d 263, 271 (Ct.Cl.1980), in which our predecessor court held that a person who was still a Government employee would have no claim for annuity retirement credits until he retired from Government service
 
 
 [15]
 As mentioned in note 3, supra, however, OPM concedes this point if we hold adversely to OPM on the two issues appealed to us. In other words, OPM is admitting that, if indeed the military time counts, then petitioners should have been permitted to apply for immediate retirement in lieu of removal
 
 
 [16]
 In 1980 Congress amended Sec. 2109(1) to add the Department of the Defense. Pub.L. No. 96-347, 94 Stat. 1150. The purpose of the amendment was to extend early retirement benefits "to civilian air traffic controllers working for the Department of Defense," a small group of some 320 controllers, as opposed to the 20,000 working for the Department of Transportation. S.REP. NO. 902, 96th Cong., 2d Sess. 1-2, reprinted in 1980 U.S.CODE CONG. & AD.NEWS 2714 (emphasis supplied). See also the legislative history of the original 1972 law providing early retirement benefits for controllers, wherein Congress stated that it considered including civilian Department of Defense controllers, but decided not to. Pub.L. No. 92-297, 86 Stat. 141, S.REP. NO. 774, 92d Cong., 2d Sess., at 3-4, reprinted in 1972 U.S.CODE CONG. & AD.NEWS 2287 at 2289-91
 
 
 [17]
 See notes 3 and 15, supra. The "for cause" rationale upon which the board based its decision is now moot, since OPM concedes that the immediate retirement would have been offered in lieu of removal
 
 
 [1]
 Compare 5 U.S.C. Sec. 7121(f) re appeals to this court of arbitration decisions
 The majority vaguely finds support for its exercise of jurisdiction because of adverse or disciplinary actions against appellants but does not assert that appellants' appeals to the board fall within 5 U.S.C. Sec. 7701. Clearly they do not under precedent of this court. Williams v. Office of Personnel Management, 718 F.2d 1553 (Fed.Cir.1983).
 
 
 [2]
 While the same is true with respect to any kind of involuntary retirement case, it is the clear prerogative of Congress to prescribe the method of and extent of review for any grant, and we have specifically denied reviewability of involuntary disability claims. Henderson v. OPM, 724 F.2d 119 (Fed.Cir.1983)
 
 
 [3]
 The circuits continue to review appeals of MSPB decisions filed before the transfer of jurisdiction to this court by the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25. A similar conflict between circuits was noted by the Supreme Court in Morton v. United States, --- U.S. ----, ----, 104 S.Ct. 2769, 2772, 81 L.Ed.2d 680 (1984) as a reason for the grant of the government's petition in that case
 
 
 [4]
 In Lancellotti, 704 F.2d at 97-98, the Third Circuit found jurisdiction in 28 U.S.C. Sec. 2342(6) (Supp. IV 1980) (now repealed)
 
 
 [5]
 Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25
 
 
 [6]
 I presume that the claims at this time amount to more than $10,000 so that transfer to a district court is not a viable alternative